### A08A0749. MAZZA v. THE STATE.
(664 SE2d 548)

JOHNSON, Presiding Judge.

A Gwinnett County grand jury indicted Leonardo Mazza on four felony charges: battery,[1] burglary,[2] cruelty to children in the second degree,[3] and terroristic threats.[4] His first trial ended in a mistrial upon a motion made by the defendant. At his second trial, a jury returned guilty verdicts against Mazza as to the battery, cruelty to children in the second degree, and terroristic threats charges, and acquitted him of the burglary charge. A judgment of conviction was entered upon the guilty verdicts, and Mazza was sentenced, in the aggregate, to ten years to serve four in confinement, with the balance being probated. Mazza's motion for new trial was denied on May 15, 2007.

In this appeal, Mazza enumerates four claims of error: (1) that the judgment against Mazza violates the Georgia Constitution and is a nullity because the trial judge presiding over his case was not properly designated to sit as a superior court judge; (2) that Mazza's trial counsel was ineffective because he failed to object to the designation of the trial court judge to sit in his case; (3) that there was insufficient evidence to support the jury's verdict as to the terroristic threats count of the indictment; and (4) that Mazza's second trial was barred by the constitutional principle of double jeopardy. We find no merit in any of these claims of error, and therefore affirm Mazza's convictions.

There are many conflicts in the evidence in this case. However, when, as here, a defendant challenges the sufficiency of the evidence to support his convictions, we are required to view the evidence presented at trial in the light most favorable to support the verdicts,

---

[1] OCGA § 16-5-23.1.

[2] OCGA § 16-7-1.

[3] OCGA § 16-5-70 (c).

[4] OCGA § 16-11-37.

and the defendant no longer enjoys the presumption of innocence.[5] We neither weigh the evidence nor assess the credibility of witnesses, but merely determine whether a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.[6]

So viewed, the evidence in the record shows that on the late afternoon or early evening of June 30, 2006, Marcelo Monzon went to the apartment of Gabriela Cardozo, with whom he had a personal relationship. While the two were waiting for Ms. Cardozo's oldest son to return from a party, the appellant Leonardo Mazza arrived at the apartment. Mazza is the father of Cardozo's youngest son. Apparently angered by the presence of Monzon, Mazza confronted Cardozo, and they began to argue. The argument became heated, then violent, and Mazza struck Cardozo in the face with his fist, causing a laceration above her left eye and bruising to her right cheek.[7] A neighbor called the police. Mazza left the scene before the police arrived. Paramedics from the Gwinnett County Fire Department were dispatched to the scene, where they treated Cardozo for her injuries. As was their custom in domestic violence cases, the police photographed Cardozo at the scene, and the photo showing her injuries was admitted into evidence at the trial. Cardozo declined to be taken to a hospital for further examination and treatment, and signed a release form for the paramedics.

Following the incident, on the night of June 30, 2006, Cardozo's oldest son, Jonathan Olivera, returned to his mother's apartment and found that no one was there. At that time, according to both Olivera and the police officers investigating the incident, the door to Cardozo's apartment was undamaged. Olivera found his mother at a neighbor's apartment, and there he learned that Mazza had struck and injured his mother. Olivera and Cardozo spent the night in the neighbor's apartment after indicating to the police officers that Cardozo was afraid to stay in her own apartment. Based upon the statements of the victim and witnesses, the police procured an arrest warrant for Mazza.

The next day, July 1, 2006, Olivera returned to his mother's apartment. He discovered that the door was partially opened, and upon opening it completely, he discovered that the door had been kicked in and was badly damaged. Olivera found Mazza sitting at a table inside the apartment. No one else was present. Mazza had packed a suitcase with some of his clothing. Olivera confronted

---

[5] *Grooms v. State*, 261 Ga. App. 549 (1) (583 SE2d 216) (2003).

[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Grooms*, supra.

[7] Mazza had previously been convicted of battery against Cardozo because of an incident in December 2004, so the battery charge against him in the instant case is a felony.

Mazza over the attack on Cardozo. He knew that the police were looking for Mazza in connection with the attack. Olivera asked Mazza why he was there in the apartment, and Mazza told him he was there to kill Cardozo. Olivera told Mazza he was calling the police, and Mazza left the scene. He did not take the suitcase containing his clothes with him, and the police later took it as evidence. As he was leaving, Mazza threatened to kill Olivera. The police responded to the scene, and Olivera provided both verbal and written statements to the officers.

1. Mazza's first two enumerations of error are related. In the first, he argues that the Chief Magistrate of Gwinnett County who presided over Mazza's trial, sitting by designation following a request for judicial assistance by the superior court judge assigned his case, was not properly appointed and thus was without authority to preside over the trial. In challenging this appointment, Mazza argues that though the record shows the proper request by the trial judge assigned the case, and proper action by the chief judges of both the Gwinnett County Superior Court and the Gwinnett County Magistrate Court in making the appointment, the appointment is a nullity because there is no documentation showing that a majority of the superior court judges in the Gwinnett Judicial Circuit had determined that judicial assistance was needed. In the second and related enumeration, Mazza argues that his trial counsel was ineffective because he failed to challenge the appointment of the magistrate to sit by designation in his case.

We do not reach the merits of Mazza's first argument, because it is well settled that a challenge such as the one he presents must be made in the trial court at the time of the appointment or it is waived.[8] Mazza failed to object to the appointment of the magistrate to sit as a superior court judge prior to the commencement of the trial and, thus, failed to preserve the issue for appeal.

Nor is there merit to Mazza's claim that his trial counsel was ineffective for failing to object to the allegedly improper appointment of the magistrate to sit as a superior court judge. To establish a claim of ineffective assistance of trial counsel, a defendant must show that his trial counsel's performance fell below an objective standard of reasonableness and that the deficiency prejudiced the defense.[9] Mazza has failed to make any showing that he was denied a fair trial

---

[8] See *Moreland v. State*, 279 Ga. 641 (2) (619 SE2d 626) (2005); *Oliver v. State*, 273 Ga. App. 754, 758 (615 SE2d 846) (2005); *Maldonado v. State*, 240 Ga. App. 497 (523 SE2d 917) (1999).

[9] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). See also, *Moreland*, supra.

by virtue of the appointment.[10] Moreover, in his testimony during the hearing on Mazza's motion for new trial, Mazza's trial counsel indicated that he did not object to the appointment of the magistrate because he believed that Mazza would actually benefit from having the particular magistrate preside over his trial rather than the superior court judge originally assigned to the case. Clearly, then, the failure to object to the appointment was a matter of trial strategy or tactics, which cannot be the basis for an ineffective assistance of counsel claim.[11]

2. Mazza argues that the evidence presented at trial is insufficient to support his conviction of making a terroristic threat. A person commits the offense of making a terroristic threat when he threatens to commit any crime of violence with the purpose of terrorizing another.[12] Mazza was indicted for and convicted of threatening to murder Cardozo. His argument on appeal, however, does not focus on that threat, but focuses exclusively on the testimony of Olivera that Mazza had also threatened to kill him. Mazza argues that this assertion by Olivera that Mazza had threatened to kill him is uncorroborated by any other evidence and thus, Mazza concludes, his terroristic threats conviction cannot stand.

"It is true that a person may not be convicted of terroristic threats based solely on the uncorroborated testimony of the party to whom the threat is communicated."[13] However, since Mazza was not indicted for or convicted of the threat to kill Olivera, his argument concerning corroboration of that threat is misplaced and provides no basis for reversing his conviction. Moreover, we note that as is clear from the recitation of facts above, there is ample evidence in the record to support Mazza's conviction of making terroristic threats against Cardozo.[14]

3. Mazza argues that his second trial violated his constitutional right against being twice put in jeopardy for the same crime. His trial counsel argued below that Mazza's second trial should have been barred because his first trial ended in a mistrial when Olivera testified that Mazza was "in jail" in response to a prosecution question asking if Mazza was living in the apartment with Cardozo and her children at the time immediately before June 30, 2006. The mistrial was granted upon the motion of Mazza's counsel.

---

[10] See *Strozier v. State*, 277 Ga. 78, 82 (8) (586 SE2d 309) (2003).

[11] *Gillison v. State*, 254 Ga. App. 232, 234 (4) (a) (561 SE2d 879) (2002).

[12] OCGA § 16-11-37 (a).

[13] (Footnote omitted.) *Denson v. State*, 259 Ga. App. 342, 344 (1) (577 SE2d 29) (2003).

[14] Id. (slight circumstances may provide sufficient corroborating evidence).

Generally, when a mistrial is granted based on a defendant's motion, he waives any claim of double jeopardy.[15] An exception arises when a prosecutor has goaded the defense into making a motion for mistrial in order for the prosecution to avoid a reversal of the conviction because of prosecutorial misconduct or judicial error or to otherwise obtain a more favorable chance of a guilty verdict on retrial. In such instances, the double jeopardy clause will stand as a bar to retrial.[16] In *State v. Traylor*, the Supreme Court held that "the defendant must show that the State was purposely attempting[,] through its prosecutorial misconduct[,] to secure an opportunity to retry the case. . . ."[17] Mazza has not met this burden. To the contrary, the trial court found, and we agree, that there was no prosecutorial misconduct. Mazza was charged with burglary. An issue arose as to whether he was living in Cardozo's apartment or had permission to be there. The prosecutor's question to the witness was phrased so as to elicit a simple yes or no answer. The witness answered that Mazza was in jail, a nonresponsive answer. There being no prosecutorial misconduct and no showing of any intent to goad the defense into making a motion for mistrial, the general rule that a second trial is not barred when the mistrial was requested by the defendant applies.[18] Mazza could be properly re-tried on the charges.

Having found no merit in any of Mazza's claims of error, the judgments of conviction entered in the court below are affirmed.

*Judgment affirmed. Barnes, C. J., and Phipps, J., concur.*

DECIDED JUNE 24, 2008.

*Mark A. Yurachek*, for appellant.
*Daniel J. Porter, District Attorney, Lisa A. Jones, Stephen A. Fern, Assistant District Attorneys*, for appellee.

---

[15] *Beach v. State*, 260 Ga. App. 399, 400 (579 SE2d 808) (2003).

[16] *Mathis v. State*, 276 Ga. App. 587, 588 (623 SE2d 674) (2005).

[17] (Citation omitted.) 281 Ga. 730, 731-732 (642 SE2d 700) (2007).

[18] In *State v. Traylor*, supra, there is a useful and extensive discussion about the general rule and the exception at issue here which holds that even if there is intentional prosecutorial misconduct, it will not bar a second trial unless the defendant shows the prosecutor intended to terminate the trial as opposed to intended to prevail at trial by impermissible means.