264 P.3d 615 (2010)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of A.G., A.G., R.B., and N.B., Children, and
Concerning C.M., Respondent-Appellant.
No. 09CA1451.
Colorado Court of Appeals, Div. VII.
April 15, 2010.
*616 Mendenhall & Malouff, R.L.L.P., Phillip F. Malouff, Jr., La Junta, Colorado, for Petitioner-Appellee.
Davide C. Migliaccio, Colorado Springs, Colorado, for Respondent-Appellant.
Opinion by Judge ROMAN.
C.M. (mother) appeals from the judgment terminating the parent-child legal relationship with her children, A.G., A.G., R.B., and N.B. We reverse and remand for further proceedings.

I. Factual and Procedural Background
The Otero County Department of Human Services (the department) obtained emergency custody of the children in October 2007, after a four-year-old child died in mother's home. The child, who was the child of mother's boyfriend, died because of bacterial sepsis due to chronic abuse and neglect. The following month, a dependency and neglect petition was filed on the children's behalf. Mother was charged with child abuse.
The children were placed with their respective fathers in December 2007. That *617 month, the court determined the children were dependent and neglected as to mother.
The following month, the court adopted a treatment plan for mother, which required her to participate in a parent-child interactional assessment; establish and maintain self-sufficiency, mental stability, and sobriety; and participate in a psychological evaluation. Mother's completion of the parent-child interactional assessment was contingent upon the completion of the psychological evaluation.
By June 2008, mother had completed the psychological evaluation and the department was waiting for the results. She had also completed her substance abuse and mental health evaluations, both of which concluded she needed mental health treatment and counseling.
In August 2008, the department moved the court to "turn over custody" of the children to their respective fathers and to dismiss the fathers from the case. Simultaneously, the department sought to terminate mother's parental rights, presumably in part because her psychological evaluation was "unfavorable" for having the children returned to her physical custody.
The following month, the court gave custody of the children to their respective fathers, nine months after their placement in those homes. The next month, mother began serving a six-year prison sentence.
In April 2009, the trial court terminated mother's parental rights. Shortly thereafter, mother filed a motion to recuse the trial court judge because his court clerk was the caseworker's mother. Mother simultaneously filed a motion for a new trial, arguing that (1) the trial judge should have sua sponte recused himself, and (1) her counsel was ineffective for not timely filing the motion to recuse, despite his prior knowledge of the relationship between the court clerk and the caseworker. The judge denied the motion, finding that he had no conflict of interest because he had no contact with the caseworker except in court.

II. Recusal
Mother asserts the trial judge erred by (1) not recusing himself sua sponte, presumably at the termination hearing, and (2) denying her motion for new trial and for recusal. In a case of first impression, we conclude the trial judge erred by determining the relationship between the court clerk and the caseworker did not warrant recusal. However, we remand for further proceedings to determine (1) whether mother has waived her right to raise this claim and (2) whether mother received ineffective assistance of counsel and has therefore not waived her right to raise this claim.
We typically review a trial judge's determination on a motion to recuse for an abuse of discretion. In re Marriage of Mann, 655 P.2d 814 (Colo.1982).
"Section 16-6-201(1)(d), C.R.S. 200[9], provides that a judge is disqualified to hear a case if `[h]e is any way interested or prejudiced with respect to the case, the parties, or counsel.' Either actual prejudice or its mere appearance can require the disqualification of a judge." People v. Barton, 121 P.3d 224, 228-29 (Colo.App.2004) (citation omitted) (citing People v. Dist. Court, 192 Colo. 503, 510, 560 P.2d 828, 833 (1977)), overruled on other grounds by Lopez v. People, 113 P.3d 713, 729 (Colo.2005).
When recusal is sought based on the relationship of a judge and another person, our supreme court has stated, "[T]he mere existence of a relationshipwhether personal or professionalis insufficient grounds for disqualification. Rather, it is the closeness of the relationship and its bearing on the underlying case that determines whether disqualification is necessary." Schupper v. People, 157 P.3d 516, 520 (Colo.2007) (citation omitted).
Further, as relevant here, a judge "shall be disqualified in an action in which he is ... so related or connected with any party ... as to render it improper for him to sit on the trial." C.R.C.P. 97. And a judge must disqualify himself if he or his spouse or a person within the third degree of relationship to either of them is known to the judge to be a *618 material witness in the proceeding. C.J.C. 3(C)(1)(d)(IV).[1]
The rules in Colorado that govern judicial conduct contain no provision with regard to court employees and those employees' relationships with material witnesses. However, there are rules that govern the conduct of court employees, prescribed by the supreme court, § 13-3-105(1), (3)(b), C.R.S.2009, which we look to for guidance. Those rules provide that a judicial employee "shall avoid any involvement in the processing of any matter before the courts ... in which the employee has a personal, business, or family interest." C.J.S.P.R. 22(C).[2] Similarly, the Judicial Conference of the United States has adopted Codes of Conduct for federal judicial employees.[3] Although not binding on state courts, these codes also provide guidance. Cf. People v. Owens, 219 P.3d 379, 387 (Colo. App.2009) (this court may consider federal precedent as long as the judicial canons or statutes are similar to ours). We find the relevant provisions of the federal C.C.J.E., although more detailed, similar enough to the relevant C.J.S.P.R. to be persuasive.
As relevant here, the C.C.J.E. states that a court clerk should not perform any official duties in any matter in which the clerk knows that a person within the third degree of relationship to her is likely to be a material witness. C.C.J.E. 3(F)(2)(b). Although the trial judge may adopt "additional safeguards" to ensure that official duties are properly performed if that restriction poses an undue hardship, the trial judge should also consider whether the judicial codes of conduct require the judge's recusal from the case. Id.
Moreover, established Colorado law provides that a judge should disqualify himself in a proceeding where his impartiality "might reasonably be questioned." C.J.C. (3)(C)(1). Courts must meticulously avoid any appearance of partiality. "Although the trial judge believes in his own impartiality, it is the court's duty to `eliminate every semblance of reasonable doubt or suspicion that a trial by a fair and impartial tribunal may be denied.'" Pierce v. United Bank, 780 P.2d 6, 7 (Colo.App.1989) (quoting Zoline v. Telluride Lodge Ass'n, 732 P.2d 635, 639 (Colo.1987)). Thus, in assessing the sufficiency of the motion and affidavits, the judge must consider the appearance of bias, for the integrity of the judicial process is impaired when the public perceives partiality on the part of a judge. Wilkerson v. Dist. Court, 925 P.2d 1373, 1376 (Colo.1996). For these reasons, and contrary to the assertion of the children's guardian ad litem (GAL), the parent need not show actual prejudicethe appearance of impropriety is sufficient to warrant recusal. See Johnson v. Dist. Court, 674 P.2d 952, 956 (Colo.1984).
The relevant facts in the affidavit are undisputed. If facts have been set forth that create a reasonable inference of a "bent of mind" that will prevent the judge from dealing fairly with the party seeking disqualification, the judge must recuse. C.R.C.P. 97; In re Marriage of McSoud, 131 P.3d 1208, 1223 (Colo.App.2006).
Here, the judge considered the recusal issue by examining his relationship with the caseworker. However, the question here is not whether the trial judge's relationship with the caseworker warranted recusal, but rather whether his relationship with his clerk and her relationship to the caseworker created the appearance of impropriety sufficient to warrant recusal.[4]See C.C.J.E. 3(F)(2)(b); see Barton, 121 P.3d at 230 (impact of court's *619 relationship with court clerk considered in motion to recuse).
There is no question that had the caseworker been the judge's daughter, the judge would have had to recuse from the case. See C.J.C. 3(C)(1)(d)(IV). It is also clear that the court clerk could conduct no work on the case because her daughter, the caseworker, was a material witness in the case. See C.J.S.P.R. 22(C).
We consider the appearance of impropriety from the perspective of "an objective, disinterested observer." People v. Schupper, 124 P.3d 856, 859 (Colo.App.2005), aff'd, 157 P.3d 516 (Colo.2007). From that perspective, we conclude that grounds for recusal existed. A trial judge and his or her court clerk work together on a daily basis. Among other things, the clerk schedules court proceedings, assists the judge with case flow management, and maintains an orderly courtroom.[5] Indeed, here mother alleges that the clerk works alongside the judge giving assistance in most of the trial judge's cases and did so in this case during most if not all of the proceedings, including the hearing on the department's motion for parental termination.
The court clerk is an integral part of the functioning of the courtroom and the processing of the matters before the judge, and the judge and the clerk necessarily must have a good relationship for the smooth functioning of a courtroom. Implicit in that relationship, therefore, is the trial judge's assessment of the clerk's competence, credibility, and reliability. A disinterested observer could reasonably believe that the judge's ability to make unbiased credibility determinations about the caseworker, the child of his court clerk, would be impacted by the judge's relationship with the court clerk. Accordingly, we conclude that if no waiver occurred, the trial judge abused its discretion by not recusing himself.
In addition, the department sought to terminate parental rights, at least in part, based on section 19-3-604(1)(c), C.R.S.2009, which requires the department to prove, by clear and convincing evidence, that the mother has not reasonably complied with her treatment plan or that the plan has not been successful, or that the mother is unfit and unlikely to become fit within a reasonable time. In this case, the caseworker was the primary witness who testified about mother's compliance with the treatment plan. Thus, the caseworker's credibility was at issue.
We recognize there are only two district court judges who serve Otero County. See § 13-5-117(2), C.R.S.2009. However, these matters could be heard by a senior judge. See § 24-51-1105, C.R.S.2009. Further, the trial judge may avoid this difficulty in future cases by promptly advising the parties of the potential conflict, and seeking a written waiver from the parties allowing him to continue presiding on the case. See C.J.C. 3(D).[6] The department may also seek to prove its cases through witnesses other than the caseworker.
In sum, we conclude that the relationship between the court clerk and the caseworker required the trial judge to recuse himself. Our inquiry, however, is not at an end.

III. Ineffective Assistance of Counsel and Waiver of the Recusal Issue
Mother did not timely raise the recusal issue even though her counsel knew of the relationship at the outset of the case and the trial court advised her personally of the relationship in her related criminal case prior to the termination hearing in this case.
A court may deny a motion to recuse if it is untimely. People in Interest of S.G., 91 P.3d 443, 449 (Colo.App.2004). Moreover, a party's failure to promptly assert known grounds of disqualification or grounds that could be ascertained by the exercise of due diligence may constitute waiver of the party's right to seek disqualification. Aaberg v. Dist. Court, 136 Colo. 525, 528, 319 P.2d 491, 493-94 (1957); In re Estate of Binford, 839 P.2d 508, 511 (Colo.App. *620 1992) (motion under C.R.C.P. 97 should be filed promptly after the grounds for recusal are known), abrogated on other grounds by Scott v. Scott, 136 P.3d 892, 895-96 (Colo. 2006). Likewise, waiting until an adverse ruling has been made before filing a motion to recuse may constitute a waiver. In re Marriage of Fifield, 776 P.2d 1167, 1168 (Colo.App.1989).
A finding of waiver depends upon the facts and circumstances present in each particular case. Zoline, 732 P.2d at 638. The relevant facts and circumstances here hinge on mother's assertion that trial counsel was ineffective for not timely seeking the trial judge's recusal. If the failure to timely move to recuse the judge constitutes ineffective assistance of counsel, mother cannot be bound by waiver. Accordingly, we turn to whether counsel acted ineffectively by not timely raising the recusal issue.
A parent's right to appointed counsel in termination proceedings is secured by statute and not by constitutional mandate. People in Interest of C.H., 166 P.3d 288, 290 (Colo.App.2007). Nevertheless, termination proceedings "cue constitutional due process concerns." A.L.L. v. People in Interest of C.Z., 226 P.3d 1054, 1062 (Colo.2010). Thus, a parent may challenge an order of termination on the ground that the parent did not receive effective assistance of counsel. C.H., 166 P.3d at 290.
To establish a claim of ineffective assistance of counsel in termination proceedings, the parent must show (1) counsel's actions fell below the standard of care and (2) the parent was prejudiced by counsel's action. Id. at 290-91.
Here, prejudice is established by the fact that the trial judge should have recused himself, as discussed above, which would entitle mother to a new termination hearing.
The question, therefore, is whether counsel's actions fell below the standard of care. We recognize that counsel admitted in the motion for new trial that his action of not timely moving to recuse the trial judge constituted ineffective assistance of counsel, and neither the GAL nor the department disputed that assertion in the trial court or offered any evidence that the failure to timely move did not fall below the standard of care. However, counsel's admission does not establish ineffectiveness as a matter of law.
Generally, great deference is given to counsel's choice of trial strategy. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, decisions of trial strategy are held to a standard of professional reasonableness. People v. Bergerud, 223 P.3d 686, 694 (Colo.2010).
Thus, not timely filing a motion to recuse may constitute ineffective assistance of counsel; however, it may also be a strategic decision. Thompson v. State, 990 So.2d 482, 489 (Fla.2008). In order to prevail on an ineffective assistance of counsel claim for failure to seek recusal, the parent would have to overcome the presumption of deference to which defense counsel's strategic decisions are entitled, and show, at a minimum, that there is a reasonable probability that the motion would have, or should have, been granted. Griffin v. McNeil, 667 F.Supp.2d 1340, 1358 (S.D.Fla.2009).
Motions to recuse are, or should be, brought with great care. Therefore, counsel may have concluded that despite his clerk's relationship to a key adverse witness, the judge assigned was preferable, for this case, to the other available judge, which would make not timely moving to recuse a matter of reasonable trial strategy. See Spells v. Comm'r of Corr., 108 Conn.App. 192, 947 A.2d 404, 407-08 (2008); Mazza v. State, 292 Ga.App. 168, 664 S.E.2d 548, 551 (2008).
Likewise, lawyers are often reluctant to file motions to recuse for fear that denial could result in the client's case being decided by an antagonistic judge. Given the lack of clear authority here, mother's counsel may well have decided not to file a motion to recuse based on such a consideration. Counsel may have discussed the issue with mother and they may have decided not to seek the judge's recusal, based at least in part on her prior experience with the judge in the criminal matter. However, because there was no record made below, even though the issue was before the court, the question of why counsel did not timely seek recusal has not *621 been resolved. Thus, further proceedings are required on remand.
In addition, the court should consider other relevant information communicated to mother by her attorney in this case or her attorney in the criminal case, along with how she ultimately learned of the relationship in question, and whether there were discussions of what should be done with that information. Ultimately, the court should determine whether, under all of the relevant circumstances, even if mother's counsel had recommended that mother seek recusal, mother would have filed a motion to recuse.
Accordingly, a remand is appropriate for the court to conduct an evidentiary hearing on the issue of whether counsel's conduct fell below the standard of care. See C.H., 166 P.3d at 291. The hearing on remand shall be presided over by a different judge, who shall appoint new counsel for mother.
On remand, the second judge may conclude that counsel's actions did not fall below the standard of care, in which case mother would have waived her argument that the trial judge should have recused himself.
Regardless of whether recusal was mandatory or waived, we address the remainder of mother's arguments.

IV. Findings
Mother asserts that the court did not make adequate findings by clear and convincing evidence that (1) no appropriate treatment plan could be adopted, or (2) the department made reasonable efforts to reunite the family. She further asserts that the court made no findings that no less drastic alternatives existed or that termination was in the children's best interests. We agree that the findings are insufficient.
The findings supporting an order terminating the parent-child legal relationship are adequate as long as they conform to the criteria set forth in section 19-3-604, C.R.S.2009. To be adequate, a trial court's findings must sufficiently address and resolve each specific requirement for termination. We set aside an order only when the court's findings do not conform to statutory criteria and we cannot determine the basis for the court's order of termination. People in Interest of T.L.B., 148 P.3d 450, 457 (Colo. App.2006).
The trial court's termination order here did not make findings that conform to the statutory criteria for termination. That order recited the evidence adduced at trial, and provided citations to the relevant statutory and case law, but drew no conclusions linking the recited facts to the relevant law. The court did not state under which subdivision of section 19-3-604(1), C.R.S.2009, it was terminating parental rights. If it intended to terminate parental rights under section 19-3-604(1)(c), it did not find explicitly that the treatment plan was appropriate, the department made reasonable efforts to reunify the family, mother had not reasonably complied with her treatment plan, that plan was unsuccessful, mother was unfit,[7] and mother was unlikely to become fit within a reasonable time. If the court intended to terminate parental rights under section 19-3-604(1)(b)(I), C.R.S.2009, it did not find explicitly that mother had an emotional illness, mental illness, or mental deficiency within the meaning of that section such that no treatment plan could be developed for her.[8]
We also cannot discern the basis of the court's order from the termination motion, as it alleged parental rights should be terminated under each possible statutory ground. Therefore, because we cannot determine the basis for the court's order of termination, see *622 T.L.B., 148 P.3d at 457, a remand is required for the court to make new findings of fact.
We further agree with mother that the court did not make adequate findings with regard to less drastic alternatives or the children's best interests. In so doing, we recognize that (1) section 19-3-604 does not require a trial court to make an express finding that less drastic alternatives to termination have been considered and eliminated, and (2) a trial court's consideration and elimination of these alternatives are implicit in the statutory criteria for termination. People in Interest of M.M., 726 P.2d 1108, 1122 (Colo. 1986). We also recognize that, as long as the trial court's findings conform to the statutory criteria for termination and are adequately supported by evidence in the record, a reviewing court may reasonably presume that, in the absence of any indication in the record to the contrary, the trial court considered and eliminated less drastic alternatives. Id.; C.S. v. People in Interest of I.S., 83 P.3d 627, 640 (Colo.2004).
However, because, as discussed above, the trial court's findings do not conform to the statutory criteria, we cannot conclude that the court considered and rejected less drastic alternatives; such alternatives are not mentioned in the court's order. See C.S., 83 P.3d at 640; M.M., 726 P.2d at 1122. Further, because the children were placed with their respective fathers, the court should have expressly explained why an allocation of parental rights was not a viable, less drastic alternative.
Finally, we agree that the court erred by not making findings with regard to the children's best interests. Although the statutory scheme does not contain an express requirement that the court consider a child's "best interests" before terminating parental rights, it requires the court to "give primary consideration to the physical, mental, and emotional conditions and needs of the child." § 19-3-604(3), C.R.S.2009. Such a consideration is, in essence, an examination of the children's best interests. See C.H., 166 P.3d at 289 (citing section 19-3-604(3) for the proposition that a court must find termination is in a child's best interests). Thus, while the court recited the provisions of section 19-3-604(3), it made no factual findings about the children's needs.
For the reasons set forth above, we conclude the trial court's findings are insufficient. If the second judge determines mother's counsel was effective and has therefore waived her right to seek the first trial judge's recusal, the second judge shall transfer the matter back to the first trial judge to make new findings of fact.

V. Due Process
Mother asserts she suffered a due process violation because the department filed its motion to terminate shortly after receiving the psychological evaluation. We construe this argument as a challenge to the department's ability to seek to terminate parental rights under section 19-3-604(1)(b)(I), because mother had an emotional illness, mental illness, or mental deficiency that precluded the provision of a treatment plan even though she had previously received a treatment plan, which would typically lead to a termination motion under section 19-3-604(1)(c). However, even if mother had previously received a treatment plan, the department may seek termination on the ground that no treatment plan would reunify the family if a subsequent psychological evaluation so determines the parent has such a mental or emotional illness or deficiency that precludes the provision of a plan. See People in Interest of D.C-M.S., 111 P.3d 559, 561-62 (Colo.App.2005).
Because mother had notice that one of the grounds upon which the department sought termination was that no treatment plan was possible because she had an emotional illness, mental illness, or mental deficiency within the meaning of section 19-3-604(1)(b)(I), she has not suffered a due process violation. See D.C-M.S., 111 P.3d at 561.

VI. Conclusion
The case is therefore remanded for further proceedings. The chief judge of the district shall transfer the case to himself or to a senior judge who shall (1) appoint new trial counsel for mother and (2) determine whether *623 mother received ineffective assistance because counsel did not timely seek the first judge's recusal. If the second judge concludes that mother received ineffective assistance of counsel, mother shall receive a new termination hearing before that judge.
If the second judge concludes mother received effective assistance of counsel on the recusal issue, and, therefore, recusal was waived, the case shall be returned to the first judge to make adequate findings, specifically considering whether a less drastic alternative exists and whether termination is appropriate based on the children's physical, emotional, and mental needs. If that judge again concludes that termination of parental rights is warranted, he shall then hold a hearing on whether mother received ineffective assistance of counsel because counsel did not timely assert that the treatment plan was defective or that no parent-child interactional assessment was conducted. Mother may appeal any determinations on remand.
The judgment is reversed and the case is remanded for proceedings consistent with this opinion.
Judge J. JONES and Judge MILLER concur.
NOTES
[1] The term "third degree" describes a degree of relationship between one person and another based on consanguinity, or blood relationship, and affinity, or relationship by marriage. Each generation is called a degree in determining the particular degree of the relationship. People v. Macrander, 828 P.2d 234, 239 n. 7 (Colo. 1992). A child is a person related within the third degree. Id.
[2] Colorado Judicial System Personnel Rules (C.J.S.P.R.), available at http://www. courts.state.co.us./userfiles/File/Administration/ HR/Policies/Personnel_Rules_FINAL.pdf.
[3] Codes of Conduct for Judicial Employees (1995) (C.C.J.E.), available at http://www. uscourts.gov/guide/vol2/ch2html.
[4] We emphasize that the question here is not one of actual bias or impropriety, but rather the appearance of the same.
[5] Court Judicial Assistant Job Description, available at http://www.courts.state. co.us/Careers/Description_Detail.cfm/Job_Description_ID/46.
[6] The parties may be more amenable to a waiver if the clerk were isolated from any involvement in the case.
[7] To the extent mother is correct that the court found her unfit because the children had been in foster care under the responsibility of the county department for fifteen of the most recent twenty-two months under section 19-3-604(2)(k), C.R.S. 2009, we agree this finding is not supported by the record, as the children had been placed with their respective fathers in December 2007.
[8] At the termination hearing, the department putatively withdrew its assertion that parental rights should be terminated under section 19-3-604(1)(b)(I). However, it appears to have secured the testimony of its second witness to prove exactly that point, and the trial court recited that section in its factual findings, so it is unclear whether this ground for termination had actually been withdrawn.