2016 COA 20

The **PEOPLE** of the State of Colorado, Petitioner–Appellee,

**IN the INTEREST OF Z.P.S., N.S., and M.J.S., Children,**

and

Concerning A.M.H., Respondent– Appellant.

**Court of Appeals No. 15CA1217**

Colorado Court of Appeals, Div. V.

Announced February 11, 2016

§ 24–51–1105, C.R.S.2015.

Bauer & Furman, P.C., Steven M. Furman, Fort Morgan, Colorado, for Petitioner–Appellee.

Lori J. Hulbert, Guardian Ad Litem.

Brian D. Thomas, Sterling, Colorado, for Respondent–Appellant.

Opinion by JUDGE FURMAN

¶ 1 In this dependency and neglect proceeding, A.M.H. (mother) appeals from the judgment terminating the parent-child legal relationship between her and her children, Z.P.S., N.S., and M.J.S. (children). The court found that no appropriate treatment plan could be devised for her.

¶ 2 Many parents involved in a dependency and neglect case receive a treatment plan that provides the parent with an opportunity to rehabilitate and reunite with his or her children. Even so, in limited circumstances, the Children's Code authorizes the termination of a parent's rights based on a finding that no appropriate treatment plan can be devised to address the parent's unfitness. See § 19-3-604(1)(b), C.R.S.2015. Although this case presents at least two of these circumstances—one child's death caused by parental neglect and a second's child's serious bodily injury caused by malnutrition—the trial court initially approved a treatment plan for mother. But, at a later dispositional hearing, the court found that no appropriate treatment plan could be devised to address mother's unfitness. The court ultimately terminated mother's parental rights.

¶ 3 The central issue on appeal is mother's challenge to the trial court's "no appropriate treatment plan can be devised" finding, both at the dispositional hearing and at the termination of parental rights hearing. Mother also contends this finding denied her due process because it precluded her from offering evidence at the termination hearing that she had successfully complied with the treatment plan. Because we disagree with both of her contentions, we affirm the judgment terminating mother's parental rights.

### I. The Dependency and Neglect Proceeding

¶ 4 In November 2013, one-month-old O.S. was flown to Children's Hospital in Aurora after she was found unresponsive in her mother's home and had to be resuscitated at a local hospital. O.S.'s condition was attributed to failure to thrive. At the same time, O.S.'s twin brother, M.J.S., was admitted to the intensive care unit because he also had signs of failure to thrive. As a result, the Phillips County Department of Social Services (Department) filed a dependency and neglect petition and assumed temporary custody of the twins and their siblings, three-year-old Z.P.S. and one-year-old N.S.

¶ 5 Shortly thereafter, O.S., who had suffered severe brain damage, died after she was removed from life support.

¶ 6 Mother and the children's father filed written stipulations that the children lacked proper parental care through their actions or omissions. See § 19-3-102(1)(b), C.R.S.2015 (providing that a child is neglected or dependent if the "child lacks proper parental care through the actions or omissions of the parent"). Based on the stipulation, the court entered an order adjudicating the children dependent and neglected.

¶ 7 Within one week of the adjudicatory order, the court held a dispositional hearing and approved a treatment plan for mother, requiring her to (1) take accountability for what happened to the twins and for not adequately feeding them; and (2) participate in various evaluations—a psychological evaluation, a parent-child interactional assessment, a substance abuse assessment, and a hair follicle drug test—and complete any recommended treatment.

¶ 8 The treatment plan was later amended, requiring mother to understand her role in contributing to O.S.'s and M.J.S.'s conditions rather than take accountability for their conditions.

¶ 9 But, at a later permanency planning hearing the Department asked the court to change the disposition to termination based on a finding that no appropriate treatment plan could be devised.

¶ 10 The court then held a contested dispositional hearing where it found by a preponderance of the evidence that no appropriate treatment plan could be devised for mother. See People in Interest of L.B., 254 P.3d 1203, 1208 (Colo.App.2011) (recognizing that "the preponderance of the evidence standard ap-

plies to both the adjudicatory and dispositional stages of a dependency and neglect proceeding"). Because the court permitted the children's father to relinquish his parental rights to the children at the same hearing, it entered the order only as to mother. The Department then sought to terminate the parent-child legal relationship between mother and the children.

¶ 11 After a termination hearing, the trial court found by clear and convincing evidence that "no appropriate treatment plan can be devised to address the unfitness of . . . mother" because (1) she had "an emotional illness of such duration or nature as to render her unlikely to care" for the children's needs within a reasonable time; (2) M.J.S. had suffered a single incident of serious bodily injury; and (3) the children's sibling, O.S., had died due to "proven parental abuse and neglect." The court also found by clear and convincing evidence that (1) mother's treatment plan was unsuccessful; (2) mother was unfit; and (3) mother's condition was unlikely to change in a reasonable time. Based on these findings, it entered judgment terminating her parental rights under section 19–3–604(1)(b) and (c).

## II. Dispositional Hearings

¶ 12 Mother challenges the trial court's "no appropriate treatment plan can be devised" finding on two grounds. She first contends that it was error for the trial court to hold a dispositional hearing and find that no appropriate treatment plan can be devised for a parent after it has already approved a treatment plan for the parent. She also contends that the trial court erred when it modified the dispositional order by relying on evidence that had already been considered by the court, or could have been presented to the court, at the earlier dispositional hearings. We are not persuaded.

### A. The Statutory Framework

■ ¶ 13 Dependency and neglect proceedings are brought under article three of the Children's Code to, among other things, protect a child's welfare and safety. § 19–3–100.5, C.R.S.2015; *A.M. v. A.C.*, 2013 CO 16, ¶ 10, 296 P.3d 1026. And, if a child is adjudi-cated dependent and neglected, the state gains authority to intervene into the familial relationship. *People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 10, 329 P.3d 276; *People in Interest of S.N.*, 2014 COA 116, ¶ 12, 338 P.3d 508.

¶ 14 Accordingly, following the adjudication, the court must conduct a hearing and hear evidence to determine the proper disposition that will serve the best interests of the child and the public. §§ 19–3–507(1)(a), 19–3–508(1), C.R.S.2015; *People in Interest of C.L.S.*, 934 P.2d 851, 855 (Colo.App.1996). When, as here, the expedited permanency planning (EPP) provisions apply, the court must hold the dispositional hearing contemporaneously with the adjudication or within thirty days after the adjudication, unless the disposition is termination of parental rights. § 19–3–508(1), C.R.S.2015.

¶ 15 When the proposed disposition is not termination of parental rights, the court must approve an appropriate treatment plan for the parent. § 19–3–508(1)(e)(I). An "appropriate treatment plan" is one that is "reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs." § 19–1–103(10), C.R.S.2015; *See People in the Interest of K.B.*, 2016 COA 21, ¶ 13, 369 P.3d 822. (discussing what constitutes an "appropriate treatment plan").

¶ 16 Although treatment plans serve an important role in attempting to preserve the parent-child legal relationship, the court may, under limited circumstances at the dispositional hearing, find that an appropriate treatment plan cannot be devised for a particular parent. § 19–3–508(1)(e)(I); *K.D. v. People*, 139 P.3d 695, 700 (Colo.2006). These circumstances occur when:

- the child has been abandoned based on section 19–3–604(1)(a), and the parents cannot be located;
- the child has been adjudicated dependent and neglected based on habitual abuse under section 19–3–102(2), C.R.S.2015; or
- the parent is unfit for one of the reasons listed in section 19–3–604(1)(b).

¶ 17 Bases for unfitness under section 19–3–604(1)(b)—the statute governing termination of parental rights—include:

- the parent's emotional illness, mental illness, or mental deficiency of such duration or nature as to render the parent unlikely to be able to care for the child's ongoing physical, mental, and emotional needs and conditions within a reasonable time;
- a single incident resulting in serious bodily injury or disfigurement of the child;
- the parent's long-term confinement of such duration that the parent is not eligible for parole for at least six years after the date the child was adjudicated dependent and neglected or, in cases subject to the EPP provisions, the long-term confinement of the parent is of such duration that the parent is not eligible for parole for at least thirty-six months after the date the child was adjudicated dependent and neglected;
- serious bodily injury or death of a sibling due to proven parental abuse or neglect;
- an identifiable pattern of habitual abuse to which the child or another child has been subjected and, as a result of which, a court has adjudicated another child as neglected or dependent based upon allegations of sexual or physical abuse, or a court of competent jurisdiction has determined that such abuse has caused the death of another child;
- an identifiable pattern of sexual abuse of the child; or
- the torture of or extreme cruelty to the child, a sibling of the child, or another child of either parent.

¶ 18 Generally, when the proposed disposition is termination of the parent-child legal relationship, the termination hearing serves as the dispositional hearing. § 19–3–508(1), (3); *People in Interest of M.S.*, 2012 COA 211, ¶ 3, 292 P.3d 1247. But, when the court finds at a dispositional hearing that an appropriate treatment plan cannot be devised for a parent, it must hold a permanency hearing unless a termination motion has been filed within thirty days after the finding. § 19–3–508(1)(e)(I). And, in EPP cases the court shall hear a motion for termination within 120 days after the termination motion has been filed. § 19–3–508(3)(a).

## B. Authority to Enter New Dispositional Orders

¶ 19 We first consider whether a trial court may hold a dispositional hearing and find that no appropriate treatment plan can be devised for a parent after it has already approved a treatment plan for the parent. We conclude it may.

¶ 20 The statutes governing dispositional hearings, sections 19–3–507 and 19–3–508, do not specifically address whether the court, having already approved a dispositional order, may hold a subsequent hearing to modify the previously ordered disposition. But, divisions of this court have repeatedly recognized that the initial treatment plan adopted by the court as an order at the dispositional hearing may change at the termination hearing to a determination that no appropriate treatment plan can be devised for the parent. *See People in Interest of C.Z.*, 2015 COA 87, ¶ 48, 360 P.3d 228; *People in Interest of A.G.*, 264 P.3d 615, 622 (Colo.App.2010), *rev'd in part and vacated in part on other grounds*, 262 P.3d 646 (Colo.2011); *People in Interest of T.L.B.*, 148 P.3d 450, 455 (Colo. App.2006).

¶ 21 In *A.G.*, the division concluded that even if the mother had previously received a treatment plan following the dispositional hearing, the social services department could still seek to terminate her parental rights on the ground that no treatment plan can be devised for her. 264 P.3d at 622. Similarly, in *C.Z.*, ¶ 48, the division concluded that the court could find (at the termination hearing) that no appropriate treatment plan can be devised to address a father's unfitness when it had previously approved a treatment plan for him.

¶ 22 It necessarily follows, then, that the trial court may determine at a subsequent dispositional hearing that an appropriate treatment plan cannot be devised for the parent even though it had previously approved such a plan for the parent.

¶ 23 Allowing the trial court to modify or enter a new dispositional order comports with the purposes of the Children's Code. The Children's Code is expressly designed to "preserve and strengthen family ties whenever possible." § 19–1–102(1)(b), C.R.S.2015; *People in Interest of B.C.*, 122 P.3d 1067, 1070 (Colo.App.2005). But, the Children's Code is also designed to protect children's welfare and safety by providing procedures to serve their best interests. *L.G. v. People*, 890 P.2d 647, 654 (Colo.1995).

¶ 24 Vesting a trial court with flexibility to modify an existing dispositional order or to adopt a new dispositional order furthers these statutory purposes. For example, as part of the dispositional order, the court must determine whether a child should be placed with one or both parents, in a relative's custody, or in a foster home or other child care facility. § 19–3–508(1)(a)–(c). And, it may become necessary to change a child's placement during the pendency of a dependency and neglect proceeding. *See People in Interest of A.C.*, 304 P.3d 589, 594 (Colo.App. 2011), *aff'd sub nom. M.S. v. People*, 2013 CO 35, 303 P.3d 102.

¶ 25 This flexibility is expressed in section 19–1–109, C.R.S.2015, which governs appeals in dependency and neglect proceedings. Section 19–1–109(2)(c) states that an order decreeing a child dependent and neglected is final and appealable after the entry of the disposition under section 19–3–508. But, it also provides that the appeal does not affect the trial court's jurisdiction to enter further dispositional orders that the trial court believes to be in the child's best interests. § 19–1–109(2)(c).

¶ 26 A trial court may also need to modify a treatment plan's requirements to facilitate the reunification of a parent and his or her child. Indeed, changed circumstances may render a treatment plan, previously approved at a dispositional hearing, no longer appropriate. *People in Interest of D.R.W.*, 91 P.3d 453, 459 (Colo.App.2004).

¶ 27 Thus, once a child is adjudicated dependent and neglected, the trial court is vested with flexible dispositional remedies. *See People in Interest of A.M.D.*, 648 P.2d 625, 639 (Colo.1982). Such flexibility necessarily

requires allowing the court to modify an existing dispositional order or to adopt any other order that it could have initially entered. *See In re Austin W.*, 214 Ill.2d 31, 291 Ill.Dec. 280, 823 N.E.2d 572, 581 (2005) (recognizing that "once a child has been made a ward of the court and a dispositional order has been entered, the court may, at any time, vacate the original dispositional order and enter any other dispositional order that it could have initially entered").

¶ 28 We thus conclude that a trial court may hold a dispositional hearing and find that no appropriate treatment plan can be devised for a parent after it has already approved a treatment plan for the parent. § 19–3–508(1)(e)(I).

¶ 29 In reaching this conclusion, we do not suggest that once a court has approved a treatment plan as part of the dispositional order, it must modify that order before it may terminate the parent's rights under the no appropriate treatment plan provisions of section 19–3–604(1)(b). To the contrary, as previously discussed, the court may proceed to terminate a parent's rights based on no appropriate treatment plan even when the existing dispositional order includes the provision of a treatment plan for the parent. *See C.Z.*, ¶ 48.

### C. Basis for New Dispositional Order

¶ 30 We next consider whether the trial court erred when it modified the dispositional order by relying on evidence that had already been considered by the court, or could have been presented to the court, at the earlier dispositional hearings. We conclude it did not.

¶ 31 It may well be that a shift from a disposition of reunification based on a parent successfully completing a treatment plan to a proposed disposition of termination of parental rights because no appropriate treatment plan can be devised for a parent will often be driven by changed circumstances. For example, the division in *A.G.* observed that the social services department could seek termination of parental rights on the ground that no appropriate treatment plan can be devised to render a parent fit, even though the par-

ent had previously received a treatment plan, if a later psychological evaluation determined that the parent had a mental or emotional illness or deficiency that precluded the provision of a successful plan. 264 P.3d at 622.

¶ 32 And, the court's authority to modify the dispositional order is not limited to those situations in which circumstances have changed. Rather, the court may modify a disposition of reunification to a proposed disposition of termination if the court later finds that an appropriate treatment plan cannot be devised based on the criteria identified in section 19–3–508(1)(e)(I). As noted, these criteria include the criteria for parental unfitness under section 19–3–604(1)(b).

¶ 33 The record supports mother's claim that many of the exhibits admitted into evidence at the third dispositional hearing—M.J.S.'s discharge summary, O.S.'s autopsy report, mother's psychological evaluation, and mother's parent-child interactional assessment—had been available to the parties and the court at the first and second dispositional hearings when the court approved the initial and amended treatment plans for her.

¶ 34 Before the first dispositional hearing, the Department provided the trial court with M.J.S.'s discharge summary from Children's Hospital. The summary indicated that M.J.S. had been admitted with significant failure to thrive that was related to severe malnutrition. It also noted that M.J.S. had demonstrated appropriate weight gain during his hospital stay. The next month, the Department filed the autopsy report for O.S., which showed that she had died as a result of malnutrition.

¶ 35 And, shortly before the second dispositional hearing, the Department tendered mother's psychological evaluation and parent-child interactional assessment. The psychological evaluation showed that (1) mother had signs of multiple mental health diagnoses and was disconnected from her needs and feelings; (2) mother lacked an understanding of why the twins failed to thrive; and (3) mother's failure to identify the twin's failure to thrive reflected significant psychopathy. Ultimately, the evaluator concluded that given the severity and chronicity of mother's problems, her prognosis for significant levels

of improvement—within a developmentally meaningful time frame for the children—was extremely guarded.

¶ 36 Although it may be that the parties were waiting for additional information, the record does not show why the Department proposed, and the guardian ad litem agreed to, the initial and amended treatment plans for mother.

¶ 37 Nonetheless, the record from the first dispositional hearing reveals that the court approved the initial treatment plan based on the parties' agreement. And, mother did not provide a transcript from the second dispositional hearing when the trial court adopted the amended treatment plan. Thus, we are unable to review the trial court's basis for approving the amended plan for mother.

¶ 38 Even so, as noted, at the third dispositional hearing, which was contested, the court changed the disposition based on, among other things, medical evidence about M.J.S. and O.S. We conclude the trial court did not err when it modified the dispositional order by relying on this evidence, despite the fact that it had already been considered by the court, or could have been presented to the court, at the earlier dispositional hearings. We reach this conclusion because at a dispositional hearing, the court must hear evidence on the "question of the proper disposition best serving the interests of the child." § 19–3–507(1). According to section 19–1–107(2), C.R.S.2015, this may include "written reports and other material relating to the child's mental, physical, and social history . . . along with other evidence."

### III. Termination of Parental Rights Hearing

¶ 39 We next consider whether the trial court denied mother due process because the "no appropriate treatment plan can be devised" finding precluded her from offering evidence at the termination hearing that she had successfully complied with the treatment plan. We conclude the procedures used by the trial court afforded mother due process.

¶ 40 The State must provide a parent with fundamentally fair procedures when termination of parental rights is sought. *A.M.*, ¶ 28. These procedures include a parent receiving notice of the hearing, advice of counsel, and a meaningful opportunity to be heard and defend. *People in Interest of M.B.*, 70 P.3d 618, 622 (Colo.App.2003). But, due process is flexible and calls for such procedural protections as the situation demands. *A.M.*, ¶ 28. Substantial compliance with the dependency and neglect statutes creates a presumption of no prejudice to a parent in a termination hearing. *C.S. v. People*, 83 P.3d 627, 631 (Colo.2004).

¶ 41 Section 19-3-604(1) sets forth different bases under which the court may terminate parental rights following a child's adjudication as dependent and neglected. *K.D.*, 139 P.3d at 700. As noted, the court may terminate parental rights under section 19-3-604(1)(b) if it finds that no appropriate treatment plan can be devised to address a parent's unfitness. As pertinent here, grounds for unfitness under the statute include:

- the parent's emotional illness, mental illness, or mental deficiency of such duration or nature as to render the parent unlikely to be able to care for the child's ongoing needs and conditions within a reasonable time, § 19-3-604(1)(b)(I);
- a single incident resulting in serious bodily injury to the child, § 19-3-604(1)(b)(II); and
- death of a sibling due to proven parental abuse or neglect, § 19-3-604(1)(b)(IV).

¶ 42 Alternately, the court may terminate a parent's rights under section 19-3-604(1)(c) if it finds that (1) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (2) the parent is unfit; and (3) the parent's conduct or condition is unlikely to change in a reasonable time. *People in Interest of C.H.*, 166 P.3d 288, 289 (Colo.App. 2007).

¶ 43 We conclude that mother had notice that the Department sought to terminate her parental rights under section 19-3-604(1)(b) and under section 19-3-604(1)(c). Thus, she was aware that the Department was seeking to terminate her parental rights because no appropriate treatment plan could be devised to address her unfitness.

¶ 44 Mother, with the assistance of counsel, had two opportunities—the December 2014 dispositional hearing and the termination hearing—to be heard and defend against the Department's position that no appropriate treatment plan could be devised for her. Indeed, much of the same evidence that the Department presented at the termination hearing had been presented at the December 2014 dispositional hearing. For example, evidence presented at both hearings showed:

- A neonatal physician determined that the underlying cause of O.S.'s death was cardiac arrest as a result of severe malnutrition.
- M.J.S. had also suffered from severe malnutrition and had to be admitted to the neonatal intensive care unit to manage his condition.
- The physician was unable to identify an organic or genetic cause for O.S.'s and M.J.S.'s malnutrition.
- The forensic pathologist who completed O.S.'s autopsy concluded that O.S.'s cause of death was malnutrition.
- The psychologist who evaluated mother diagnosed her with chronic depression; post-traumatic stress disorder; obsessive compulsive disorder; cannabis use and probable dependence on it; and a personality disorder with borderline, dependent, avoidant, and antisocial personality traits.
- The psychologist believed that mother's mental health concerns were so significant and longstanding that they rendered her unlikely to be able to care for the children's needs within a reasonable time.

¶ 45 The trial court allowed mother to present evidence at the termination hearing regarding her amenability to treatment. Mother testified that she had participated in individual therapy in addition to completing dialectical behavior therapy. She testified that therapy had helped her recognize her responsibility for O.S.'s death and M.J.S.'s "depleted condition," and it had changed her

ability to perceive the problems that initiated the proceeding. She also testified that she had stopped using cannabis, and she acknowledged that it had significantly impacted her ability to care for the children. Mother also called her own expert witness, a psychologist, who opined that mother could reunify with the children while complying with mental health treatment.

¶ 46 Mother does not contest the adequacy of the trial court's findings terminating her parental rights under section 19–3–604(1)(b) and (c). Nor does she contend that the court's findings lacked record support.

¶ 47 Under these circumstances, the procedures used by the trial court afforded mother due process.

### IV. Conclusion

¶ 48 The judgment is affirmed.

JUDGE HAWTHORNE and JUDGE RICHMAN concur.