2012 CO 6

**Mark Anthony MONTEZ, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 10SC294.**

Supreme Court of Colorado, En Banc.

Feb. 13, 2012.

Douglas K. Wilson, Public Defender, Elizabeth Griffin, Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 In this case, we accepted certiorari on a statutory construction issue involving the first degree burglary statute, section 18–4–202(1), C.R.S. (2011), which incorporates the armed with a deadly weapon definition contained in section 18–1–901(3)(e), C.R.S. (2011).[1] The General Assembly has defined "Deadly weapon" to include a "firearm, whether loaded or unloaded," "which in the manner it is used or intended to be used is capable of producing death or serious bodily injury." § 18–1–901(3)(e)(I). The prosecution argues that this statute classifies a firearm as per se a deadly weapon. It concedes that there is insufficient evidence in this case to sustain Montez's first degree burglary conviction if the statute does not define a firearm as a deadly weapon per se.

¶ 2 In arguing that a firearm is per se a deadly weapon, the prosecution contends that the statutory language "intended to be used" in the deadly weapon definition of section 18–1–901(3)(e) "refers to the objective intent of an item's manufacturer, as revealed by its purpose, design, and construction. Firearms are designed such that by using them as intended, they are always capable of producing death or serious bodily injury." Montez counters that "intended to be used" refers to his intent. We agree with Montez.

¶ 3 We hold that the term "intended to be used" in the deadly weapon definition of section 18–1–901(3)(e) refers to the defendant's, not the manufacturer's intent. The statute does not classify a firearm as a deadly weap-

---

1. The issue on which we granted certiorari was "[w]hether one is 'armed with a deadly weapon' for purposes of first-degree burglary by virtue of stealing a closed case containing two unloaded guns and no ammunition."

on per se. Accordingly, we vacate the first degree burglary conviction and remand this case for return to the trial court with directions to enter a second degree burglary conviction.

## I.

¶ 4 In May 2005, Mark Montez broke through a window of a home in Lakewood, Colorado, entered and ransacked the home, took about $150 and a gun case containing two unloaded shotguns, and left. After members of the public reported suspicious activities by Montez in the neighborhood, police apprehended him on the street with items traceable to the home, including the gun case containing the shotguns.

¶ 5 A jury convicted Montez of two counts of first degree burglary (one for each shotgun), as well as two counts of possession of a weapon by a previous offender, one theft count, and six habitual criminal counts based on prior convictions. The court of appeals affirmed the convictions, but merged the two convictions for first degree burglary into one. We granted certiorari to review the statutory construction issue in this case.

## II.

¶ 6 We hold that the term "intended to be used" in the deadly weapon definition of section 18–1–901(3)(e) refers to the defendant's, not the manufacturer's intent. The statute does not classify a firearm as a deadly weapon per se. Accordingly, we vacate the first degree burglary conviction and remand this case for return to the trial court with directions to enter a second degree burglary conviction.

### A. Standard of Review

¶ 7 We interpret statutes de novo. *People v. Smith*, 254 P.3d 1158, 1161 (Colo. 2011). Our goal is to give effect to the intent of the legislature. *Sigala v. Atencio's Mkt.*, 184 P.3d 40, 42 (Colo.2008). We accord words and phrases their plain and ordinary meaning. *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo.2011). The meaning of an undefined word in a statute may be determined by reference to the meaning of words associated with it. *People v. Thoro Prods. Co., Inc.*, 70 P.3d 1188, 1195 (Colo.2003).

### B. Current Provisions of the First Degree Burglary Statute

¶ 8 We now examine the statutory provisions at issue. The first degree burglary statute incorporates the definition of "deadly weapon" contained in section 18–1–901(3)(e) as follows:

> A person commits first degree burglary if the person knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in *a building or occupied structure with intent to commit therein a crime*, other than trespass as defined in this article, against another person or property, *and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom*, the person or another participant in the crime assaults or menaces any person, or *the person* or another participant *is armed with* explosives or a *deadly weapon.*

§ 18–4–202(1) (emphasis added).

¶ 9 Section 18–1–901(3)(e) defines "deadly weapon" as follows:

> *"Deadly weapon" means any of the following* which in the manner it is used or *intended to be used is capable of producing death or serious bodily injury:*
>
> (I) *A firearm, whether loaded or unloaded;*
>
> (II) A knife;
>
> (III) A bludgeon;
>
> (IV) Any other weapon, device, instrument, material, or substance, whether animate or inanimate.

(Emphasis added).

¶ 10 The present formulation of the deadly weapon definition derives from 1981 legislation of the Colorado General Assembly. *See* ch. 212, sec. 2, § 18–1–901, 1981 Colo. Sess. Laws 972. Prior to 1981, the statute provided as follows:

> "Deadly weapon" means *any firearm, whether loaded or unloaded,* knife, bludgeon, *or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is*

*used or intended to be used is capable of producing death or serious bodily injury.* See ch. 169, sec. 1, § 18–1–901, 1979 Colo. Sess. Laws 731 (emphasis added).

¶ 11 In *Bowers v. People,* 617 P.2d 560, 563 (Colo.1980), we held that the statutory language "which in the manner it is used or intended to be used is capable of producing death or serious bodily injury" applied only to the catch-all category of objects that could become weapons depending on the manner of use or intent to use the object as a weapon. In contrast, as a matter of legislative choice according to the wording of the statute as it then existed, we ruled that firearms, knives, and bludgeons were "deadly weapons by their essential nature." *Id.; see also People v. McPherson,* 200 Colo. 429, 433, 619 P.2d 38, 41 (Colo.1980).

¶ 12 In its *McPherson* decision which preceded our decision in the same case, the court of appeals assumed that the phrase "which in the manner (etc.)" applied to each of the types of weapons listed in the statute. *McPherson,* 200 Colo. at 432, 619 P.2d at 40. We disagreed and held that this phrase modified only the last antecedent in the statutory definition. We relied on the general rule of statutory construction that relative and qualifying words and phrases, where no contrary intention appears, are construed to refer solely to the last antecedent with which they are closely connected. *Id.*

¶ 13 In its 1981 legislation, following on the heels of *Bowers* and *McPherson,* the General Assembly moved the operative portion of the catch-all phrase up in the statutory definition to its current place where it modifies all types of weapons, including firearms. As an interpretive aid to determine legislative intent, we presume that when the General Assembly makes a substantive amendment to a statute, as in the 1981 act, it intends to change the law. *People v. McCullough,* 6 P.3d 774, 778 (Colo. 2000); *People v. Hale,* 654 P.2d 849, 851 (Colo.1982); *see Charnes v. Norwest Leasing, Inc.,* 787 P.2d 145, 148 (Colo.1990); *Allee v. Contractors, Inc.,* 783 P.2d 273, 281 (Colo. 1989). Additionally, when interpreting legislative amendments, we assume the General Assembly is apprised of existing case law.

*McCullough,* 6 P.3d at 778 (citing *People v. Williams,* 984 P.2d 56, 62 (Colo.1999)).

¶ 14 As a result of the General Assembly's choice, the plain language of the now-existing statute materially altered the statute we said in *Bowers* classified firearms as deadly weapons "by their essential nature." *Bowers,* 617 P.2d at 563. The prosecution maintains that the altered statute continues to classify a firearm as a deadly weapon per se. It argues that the language "intended to be used" refers to "the objective intent of an item's manufacturer, as revealed by its purpose, design, and construction." Since firearms are "always capable of producing death or serious bodily injury," the prosecution contends, the legislature must not have been referring to the defendant's intent. We disagree.

¶ 15 To the contrary, the logical and common sense deduction from the plain language of the statute is that the legislature decided not to classify a firearm as a deadly weapon per se.

### C. Application to this Case

¶ 16 To support the first degree burglary conviction in this case, the prosecution's argument would have us reinstate a per se deadly weapon definition for firearms that the General Assembly has rejected. We decline to do so. In previous cases when we spoke of a firearm being a deadly weapon per se, our discussion was dicta. *See J.D.C. v. Dist. Court,* 910 P.2d 684, 688 (Colo.1996); *People v. Ross,* 831 P.2d 1310, 1312 (Colo. 1992); *Williams v. People,* 687 P.2d 950, 955 (Colo.1984). This is the first opportunity we have had to scrutinize the statutory change the legislature made in 1981.

¶ 17 In the case before us, the court of appeals assumed that a loaded or unloaded firearm is per se a deadly weapon, contrary to the language of the existing statute. Its reasoning would make theft of a gun collection from a building or a home a first degree burglary offense regardless of the manner the gun was used or intended to be used. The legislature did not intend such a result.

¶ 18 The prosecution argues for a construction of the statute that depends on the inher-

ent design of a firearm—that it is capable of causing death or serious bodily injury. Surely, the legislature can so provide but it has not.

¶ 19 The first use of the word "used" in the statute's deadly weapon definition refers clearly to the perpetrator; nothing in the text indicates that the passive voice "intended to be used" switches the subject of the verb to the manufacturer. *See* § 18–1–901(3)(e). No mention of a manufacturer exists anywhere in the first degree burglary statute or the deadly weapon definition. In respecting the legislature's phrasing, we do not add words to a statute that simply are not there. *Turbyne v. People,* 151 P.3d 563, 567 (Colo.2007). The intent to which section 18–1–901(3)(e) refers is not the manufacturer's, but the perpetrator's. Through the 1981 rephrasing of the statute, this is as true for firearms as for knives, bludgeons, devices, instruments, materials, substances, and other weapons.

¶ 20 Had the legislature intended that firearms be deadly weapons per se—or, equivalently, that for a firearm to be a deadly weapon its manufacturer must intend it to be used in a manner capable of producing death or serious bodily injury, and that all firearm manufacturers do so intend—the legislature could have expressed that intent in any number of ways. The simplest way would have been to do nothing in 1981 to change the pre-existing formulation of the statutory provisions, and let our *McPherson* and *Bowers* holdings stand. Alternatively, the legislature could have written a statute providing that some weapons, such as firearms, are deadly weapons regardless of intent, and others are deadly weapons only when a perpetrator uses them or intends to use them in a deadly manner. A third way would be to replace "intended to be used" with "designed to be used." The legislature has chosen otherwise. Our task is to effectuate the language of the statute; it is for the legislature to consider what goals it seeks to accomplish.

■ ¶ 21 The prosecution must prove all elements of a crime beyond a reasonable doubt to satisfy due process under the constitutions of both our state and the Union. U.S. Const. amend. XIV, § 1; Colo. Const.

art. II, § 25; *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); *Vega v. People,* 893 P.2d 107, 111 (Colo.1995). At oral argument in this case, the prosecution conceded that Montez's first degree burglary conviction cannot stand if we disagree with its argument that the now-existing statute continues to classify a firearm as a deadly weapon per se.

■ ¶ 22 As Montez points out in his briefing to us, the lesser included offense of second degree burglary was submitted to the jury, which returned a guilty verdict on all elements of that offense under section 18–4–203(1), C.R.S. (2011). As relevant to the facts of this case, second degree burglary is identical to first degree burglary except that it does not require that the burglar be armed with a deadly weapon. *See* § 18–4–203(1). The proper relief on appeal in this case is to vacate the first degree burglary conviction and remand for a judgment of conviction against the defendant for the lesser included offense. *People v. Patterson,* 187 Colo. 431, 437, 532 P.2d 342, 345 (1975); *see also People v. Lybarger,* 700 P.2d 910, 916 (Colo.1985).

¶ 23 We therefore remand for entry of judgment and sentencing on the second degree burglary charge.

### III.

¶ 24 Accordingly, we reverse the judgment of the court of appeals, vacate the first degree burglary conviction, and return this case to the trial court for resentencing consistent with this opinion.