Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
January 23, 2023
AS MODIFIED March 6, 2023

**2023 CO 3M**

**No. 22SA282, *People in Int. of L.S.* — Statutory Interpretation — Dependency or Neglect — Burden of Proof.**

In this original proceeding, the supreme court considers whether the state satisfies its burden of proving that an appropriate treatment plan can't be devised for a respondent parent in a dependency and neglect case when the state establishes by a preponderance of evidence a single incident resulting in serious bodily injury to the child. The court concludes that it does. The supreme court therefore reverses the district court's order granting Mother's motion for directed verdict and remands the case for further proceedings.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2023 CO 3M

**Supreme Court Case No. 22SA282**
*Original Proceeding Pursuant to C.A.R. 21*
Arapahoe County District Court Case No. 20JV540
Honorable Don Toussaint, Judge

**In Re**
**Petitioner:**

The People of the State of Colorado,

**In the Interest of**

**Child:**

L.S.,

**and Concerning**

**Respondents:**

G.L.A. and D.S.

**Rule Made Absolute**
*en banc*
January 23, 2023

**Opinion modified, and as modified, petition for rehearing DENIED. EN BANC.**

**March 6, 2023**

**Attorneys for Petitioner:**
Ronald A. Carl, Arapahoe County Attorney
Kristi Erickson, Assistant County Attorney
*Aurora, Colorado*

Rebecca M. Taylor, Assistant County Attorney
*Littleton, Colorado*

**Attorney for Child:**
Alison Bettenberg, Guardian ad litem
*Centennial, Colorado*

**Attorneys for Respondent G.L.A.:**
Kapoor Law + Policy
Ruchi Kapoor
*Denver, Colorado*

**Attorney for Amicus Curiae Office of Respondent Parents' Counsel:**
Melanie Jordan
*Denver, Colorado*

No appearance on behalf of Respondent D.S.

**JUSTICE HOOD** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ**, **JUSTICE GABRIEL**, **JUSTICE HART**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE HOOD delivered the Opinion of the Court.

¶1 In this original proceeding, we consider whether the state satisfies its burden of proving that an appropriate treatment plan can't be devised for a respondent parent in a dependency and neglect case when the state establishes by a preponderance of evidence a single incident resulting in serious bodily injury to the child. We conclude that it does.

## I. Facts and Procedural History

¶2 The following factual background is based on the parties' stipulated motion for relief and the district court's findings of fact following the dispositional hearing on that motion.

¶3 G.L.A. ("Mother") brought L.S., who was one year old at the time, to the hospital for medical treatment. Hospital staff conducted a skeletal survey, which revealed that L.S. had a broken tibia; two additional fractures that were healing; severe bruising and swelling to his groin; and significant bruising on his back, face, and genitals. The hospital sent a referral to the Arapahoe County Department of Human Services, and the state filed a petition for dependent or neglected children in district court, alleging that Mother had physically abused L.S.

¶4 The district court adjudicated L.S. dependent or neglected. About a month later, the court found that an appropriate treatment plan couldn't be devised for Mother based on L.S.'s serious bodily injury ("SBI"), and Mother appealed.

3

¶5 Following the appellate court's dismissal of the case for lack of a final order, *People in Int. of L.R.S.*, No. 21CA432, ¶ 1 (Nov. 18, 2021), the parties filed a stipulated motion for relief. In the motion, Mother admitted that L.S. was dependent or neglected because his environment was injurious to his welfare, and she waived holding an adjudicatory hearing to determine a factual basis for her admission. The parties sought a dispositional hearing to determine whether an appropriate treatment plan could be devised.

¶6 At the end of the state's presentation of evidence, Mother moved for directed verdict, asserting that the state had "failed . . . to prove by clear and convincing evidence the existence of a single incident of SBI. There has been no evidence regarding an appropriate treatment plan whatsoever." The parties debated whether proving an SBI alone could support a finding that no appropriate treatment plan could be devised.

¶7 The district court concluded that although the state had presented evidence that L.S. was adjudicated dependent or neglected and that he had suffered an SBI, the state "did not prove by clear and convincing evidence that an appropriate treatment plan cannot be devised to address the unfitness of Mother . . . [and,] [s]tanding alone, proof of serious bodily injury is not evidence that no treatment plan can be devised." The court then granted Mother's request for directed verdict.

4

¶8     The state petitioned this court for a rule to show cause, which we issued.[1]

## II. Discussion

¶9     We first explain this court's original jurisdiction and our decision to exercise it here.  We then briefly discuss the standards that guide our review in this case and the framework for dependency and neglect proceedings.  Finally, we interpret the statutory provisions at the heart of this dispute and conclude that the district court misinterpreted the law.

### A. Jurisdiction

¶10     Whether to exercise our original jurisdiction under C.A.R. 21 is a matter wholly within our discretion.  C.A.R. 21(a)(1).  But C.A.R. 21 provides "an extraordinary remedy that is limited in both purpose and availability." *People v. Lucy*, 2020 CO 68, ¶ 11, 467 P.3d 332, 335 (quoting *People v. Rosas*, 2020 CO 22, ¶ 19, 459 P.3d 540, 545).  "Thus, in the past, we have exercised our original jurisdiction

---

[1] The state's petition presented the following issues:

1.  Whether the juvenile court erred by requiring additional evidence that no treatment plan can be devised to address a parent's unfitness beyond what is specifically enumerated in sections 19-1-508(1)(e) and 19-3-604(1)(b)(II), C.R.S. (2022).

2.  Whether the juvenile court erred in requiring clear and convincing evidence to establish that no treatment plan can be devised at a dispositional proceeding in a dependency and neglect action instead of preponderance of the evidence.

in limited circumstances, such as 'when an appellate remedy would be inadequate, when a party may otherwise suffer irreparable harm, or when a petition raises issues of significant public importance that we have not yet considered.'" *People v. Rainey*, 2021 CO 53, ¶ 9, 488 P.3d 1081, 1084 (quoting *Lucy*, ¶ 11, 467 P.3d at 335).

¶11 This petition presents all three grounds for exercising our jurisdiction. First, there is not a final order that could be appealed. *See People in Int. of E.M., L.M. & E.J.M.*, 2016 COA 38M, ¶¶ 34–35, 417 P.3d 843, 850 (concluding that where the district court found that no appropriate treatment plan could be devised for the parent and didn't otherwise enter a disposition or terminate the parent-child legal relationship, there was no appealable order for the appellate court to review), *aff'd sub nom. People in Int. of L.M.*, 2018 CO 34, 416 P.3d 875. Second, allowing the case to proceed on the district court's order will subject L.S. to an extended period of uncertainty as the court and the parties attempt to devise and implement a treatment plan for Mother. And given the history of abuse presented at the dispositional hearing, as well as the current SBI evidence, L.S. may suffer irreparable harm if we decline to intervene. Finally, this court hasn't previously discussed the evidentiary burden required at a dispositional hearing when the state asserts that an appropriate treatment plan can't be devised for a parent due to the parent's unfitness. *See In re Marriage of Wollert,* 2020 CO 47, ¶ 19, 464 P.3d

703, 709 (explaining that we may exercise original jurisdiction where "we deem this a rare opportunity to construe" a statute).

¶12    Therefore, we exercise our original jurisdiction and proceed to the merits of the petition.

## B. Standard of Review

¶13    We review de novo a district court's ruling on a motion for directed verdict. *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 982 (Colo. App. 2011). Even so, directed verdicts are disfavored; we "must consider all the facts in the light most favorable to the nonmoving party and determine whether a reasonable jury could have found in favor of the nonmoving party." *Scholle v. Ehrichs*, 2022 COA 87M, ¶ 21, 519 P.3d 1093, 1101 (quoting *State Farm Mut. Auto. Ins. Co. v. Goddard*, 2021 COA 15, ¶ 26, 484 P.3d 765, 771).

¶14    Resolution of the motion for directed verdict required the district court to interpret several statutes, a legal question that we also review de novo. *See Reigel*, 292 P.3d at 982 (explaining that because statutory interpretation presents a question of law, "we 'may make an independent determination of [the] legal question'" (alteration in original) (quoting *Omedelena v. Denver Options, Inc.*, 60 P.3d 717, 722 (Colo. App. 2002))).

¶15    Our primary goal in interpreting statutes is to ascertain and give effect to the legislature's intent. *People in Int. of J.G.*, 2016 CO 39, ¶ 13, 370 P.3d 1151, 1157.

To do so, we begin with the language of the statute, reading the words and phrases in context and according to their plain and ordinary meaning. *Bostelman v. People*, 162 P.3d 686, 690 (Colo. 2007). We construe provisions of the Children's Code liberally, favoring interpretations that produce a harmonious and consistent reading of the scheme as a whole and avoiding technical readings that would disregard the child's best interests or the legislative intent. *L.M.*, ¶ 13, 416 P.3d at 879; *Bostelman*, 162 P.3d at 690; *see also* § 19-1-102(2), C.R.S. (2022) ("[T]he provisions of this title shall be liberally construed to serve the welfare of children and the best interests of society.").

## C. Dependency and Neglect Proceedings Overview

¶16 Dependency and neglect proceedings are governed by article three of the Children's Code. §§ 19-3-100.5 to -905, C.R.S. (2022). These proceedings are "aimed at protecting children from emotional and physical harm while at the same time seeking to repair and maintain family ties." *L.L. v. People*, 10 P.3d 1271, 1275 (Colo. 2000). In striving to balance these objectives, the legislature separated the proceedings into phases. *People in Int. of D.R.W.*, 91 P.3d 453, 456 (Colo. App. 2004).

¶17 The first phase is adjudication. § 19-3-505(7)(a), C.R.S. (2022). "The purpose of adjudication is to determine whether State intervention is necessary to serve the best interests of the children, but to do so in a manner that protects parental

8

rights." *J.G.*, ¶ 24, 370 P.3d at 1159. Until the court has entered an adjudication order, "the state has limited authority to take action to protect a child." *L.L.*, 10 P.3d at 1276. If the state proves the allegations in the petition by a preponderance of the evidence, the court "shall make an order of adjudication setting forth whether the child is neglected or dependent." § 19-3-505(7)(a).

¶18 Once the court enters an adjudication order, it must hold a dispositional hearing to determine "the proper disposition [to] best serv[e] the interests of the child and the public." § 19-3-507(1)(a), C.R.S. (2022); *see also* § 19-1-103(58), C.R.S. (2022); § 19-3-505(7). The dispositional hearing should be held the same day as the adjudicatory hearing whenever possible. § 19-3-508(1), C.R.S. (2022).

¶19 During this dispositional phase, the court determines where to place the child and whether a treatment plan can be devised for the parents. *Id.* The goal is to protect the child while striving to reunify the family. *See generally* § 19-3-508; *L.M.*, ¶ 24, 416 P.3d at 880–81; *K.D. v. People*, 139 P.3d 695, 699 (Colo. 2006). At the conclusion of this initial dispositional hearing, the court will enter a "dispositional decree" that includes both child-placement and parental-treatment-plan orders; however, that decree may be reviewed and modified at any point while the case remains open. § 19-3-508(7); § 19-3-702, C.R.S. (2022); *L.L.*, 10 P.3d at 1277.

¶20 The legislature has also recognized that sometimes an appropriate treatment plan can't be devised. § 19-3-508(1)(e)(I); *K.D.*, 139 P.3d at 700; *People in Int. of*

9

*Z.P.S.*, 2016 COA 20, ¶ 16, 369 P.3d 814, 817.  For example, and as relevant here, section 19-3-508(1)(e)(I) permits a court to find that an appropriate treatment plan can't be devised "due to the unfitness of the parents as set forth in section 19-3-604(1)(b)[, C.R.S. (2022)]."  Section 19-3-604(1)(b) lists "[a] single incident resulting in serious bodily injury or disfigurement of the child" as one of the bases for parental unfitness.  § 19-3-604(1)(b)(II).  Under such circumstances, a court's dispositional decree may include a finding that an appropriate treatment plan can't be devised, thereby "avoiding the futility of proceeding with a treatment plan doomed to failure."  *D.R.W.*, 91 P.3d at 457.

¶21   After this initial dispositional hearing, and regardless of whether parents are proceeding under a treatment plan or not, the court "shall conduct a permanency planning hearing," in order "to provide stable, permanent homes for every child or youth placed out of the home, in as short a time as possible." § 19-3-702(1)(a); *see also* § 19-3-508(1)(e)(I).

¶22   Although not immediately at issue here, it is helpful to understand that dependency and neglect proceedings can culminate in termination.  If it becomes apparent that "maintaining the family unit is not feasible, . . . the court may order termination of the parent-child relationship."  *L.L.*, 10 P.3d at 1275; *see* § 19-3-602(1), C.R.S. (2022); § 19-3-604.  Termination proceedings are governed by separate rules with heightened burdens.  *See* §§ 19-3-601 to -612, C.R.S. (2022)

("termination statutes"); *see also* § 19-3-508(1), (3) (excluding termination from those provisions).

¶23 With this framework in mind, we turn to the issues presented here.

## D. Application

¶24 At the dispositional hearing following the court's adjudication order, the state introduced undisputed evidence that L.S. had suffered an SBI. The state argued that, based on sections 19-3-508 and 19-3-604, the incident of SBI rendered Mother unfit and an appropriate treatment plan couldn't be devised. Mother moved for directed verdict, asserting that the state had failed to show by clear and convincing evidence that a treatment plan couldn't be devised *to address her unfitness*, as required under section 19-3-604.

¶25 The district court agreed with Mother. It found that an SBI alone is insufficient to forgo devising a treatment plan and that the state must show by clear and convincing evidence that no treatment plan could address Mother's unfitness. In doing so, the district court raised the burden of proof and added an element not required by the statutes' plain language.

¶26 The district court relied primarily on *People in Interest of T.W.*, 797 P.2d 821 (Colo. App. 1990). Although that decision preceded the current Children's Code and includes some language that the statutes no longer contain, it also recognized that a treatment plan is not required in every case. *Id.* at 822 ("*If* a treatment plan

11

is to be part of this disposition, it must be one 'reasonably calculated to render the particular respondent fit to provide adequate parenting to the child within a reasonable time and which is relative to the child's needs.'" (emphasis added) (quoting § 19-3-111(1)(e)(II), 8B C.R.S. (1986))). The *T.W.* court concluded that, "[t]o require a trial court to ignore [the state's evidence of] a parent's irremediable conduct at a dispositional hearing and devise a treatment plan that is doomed to failure would both contravene the purposes of the Children's Code and elevate form over substance." *Id.* Thus, a trial court could conclude that an appropriate treatment plan can't be devised according to the bases in subsection 604(1)(b). *Id.* The same rule applies today.

¶27 Because a decision regarding a parent's treatment plan occurs as part of the dispositional proceedings, the governing statute is section 19-3-508. The relevant provision provides that "the court may find that an appropriate treatment plan cannot be devised . . . due to the unfitness of the parents as *set forth in* section 19-3-604(1)(b)." § 19-3-508(1)(e)(I) (emphasis added).

¶28 By its own terms, section 19-3-604 applies only to termination proceedings: "The court may order a termination of the parent-child legal relationship upon the finding by clear and convincing evidence . . . [t]hat the child is adjudicated dependent or neglected and the court finds that an appropriate treatment plan cannot be devised to address the unfitness of the parent or parents."

12

§ 19-3-604(1)(b). The next sentence of that provision, however, provides the bases necessary to support a finding of unfitness: "In making such a determination, the court shall find one of the following [seven bases] as the basis for unfitness." *Id.* This is the portion referenced in subsection 508 that "set[s] forth" the bases for unfitness and includes as one of those bases "[a] single incident resulting in serious bodily injury or disfigurement of the child." § 19-3-604(1)(b)(II).

¶29 Reading the plain language of subsections 508(1)(e)(I) and 604(1)(b)(II) together, we conclude that the legislature intended to allow trial courts to find that a parent is unfit and no appropriate treatment plan can be devised if the state shows that the child has suffered a "single incident resulting in [SBI]."[2]

---

[2] We are not persuaded by Mother's argument that this interpretation of state statutes runs afoul of the Adoption and Safe Families Act ("ASFA"), 42 U.S.C. §§ 670–679c. First, ASFA is a funding bill that provides criteria by which a state must comply to receive federal funding; it does not create a private, enforceable right for parents or children. *Suter v. Artist M.*, 503 U.S. 347, 358–64 (1992); *see* 42 U.S.C. § 1320a-2 ("[T]his section is not intended to alter the holding in *Suter v. Artist M.* that section 671(a)(15) of this title is not enforceable in a private right of action."). Second, states are given broad discretion to determine how best to comply with the Act's provisions. *Suter*, 503 U.S. at 360–63. ASFA requires state plans to make reasonable efforts to preserve and reunify the family before removing the child from the home, if possible, and to make it possible for the child to safely return, but all reasonable efforts shall place the child's health and safety as the paramount concern. 42 U.S.C. § 671(a)(15)(A)–(B). Such reasonable efforts aren't required if the parent has subjected the child to aggravated circumstances, as defined by state law. 42 U.S.C. § 671(a)(15)(D)(i). Although our legislature didn't use the same language as ASFA—"aggravated circumstances"—it defined

13

§ 19-3-604(1)(b)(II). The state need not *also* show that the parent caused the SBI or that no treatment plan can be devised *to address the parent's conduct that caused the SBI. See J.G.*, ¶¶ 23–31, 370 P.3d at 1159–61 (concluding that the court of appeals' statutory interpretation erroneously added an element that the statute didn't require and thereby ignored the plain language of the statue). SBI alone suffices.[3]

¶30    Furthermore, contrary to Mother's assertions, our interpretation does not violate her right to procedural due process. This court has repeatedly held that procedural due process is satisfied if a parent is provided with "notice of the

---

specific, limited situations where a court may determine that reasonable efforts to preserve the family would be futile. *See* § 19-3-604(1)(b). This provision complies with ASFA's requirements. *See* § 19-3-100.5, C.R.S. (2022); § 19-1-103(114), C.R.S. (2022) (defining "reasonable efforts" by explaining that the child's "health and safety are the paramount concern" and should not be "construed to conflict with federal law"); *see also Suter*, 503 U.S. at 361–63 ("[Federal] regulations provide that to meet the requirements of § 671(a)(15) the case plan for each child must 'include a description of the services offered and the services provided to prevent removal of the child from the home and to reunify the family.' 45 CFR § 1356.21(d)(4) (1991). . . . [And] [t]he term 'reasonable efforts' in this context is at least as plausibly read to impose only a rather generalized duty on the State . . . .").

[3] The statute contains no language regarding causation, and we cannot add words to the statute that aren't there. *Montez v. People*, 2012 CO 6, ¶ 19, 269 P.3d 1228, 1232. To the extent that Mother's argument "may highlight shortcomings in the statute," it is for the legislature, not the courts, to rewrite it. *People v. Butler*, 2017 COA 117, ¶ 35, 431 P.3d 643, 650; *see Owens v. Carlson*, 2022 CO 33, ¶ 30, 511 P.3d 637, 643 ("That we may rue inartful legislative drafting, however, does not excuse us from the responsibility of construing a statute as faithfully as possible to its actual text." (quoting *DePierre v. United States*, 564 U.S. 70, 82 (2011))).

14

allegations in the termination motion, the opportunity to be heard, the opportunity to have counsel if indigent, and the opportunity to call witnesses and engage in cross examination." *People in Int. of E.B.*, 2022 CO 55, ¶ 16, 521 P.3d 637, 640 (quoting *People in Int. of A.M. v. T.M.*, 2021 CO 14, ¶ 18, 480 P.3d 682, 687). And in assessing fairness, "the trial court [must] give primary consideration to the child's physical, mental, and emotional needs." *A.M.*, ¶ 20, 480 P.3d at 687.

¶31 Here, although Mother's "private interest in the continuation of the parent-child relationship is commanding," *see A.M. v. A.C.*, 2013 CO 16, ¶ 34, 296 P.3d 1026, 1036, she has been provided, and will continue to receive, notice and an opportunity to be heard. And while there is not a constitutional right to counsel for respondent parents in all cases, *see Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25–32 (1981), Mother has a statutory right to counsel "at every stage of the proceedings," § 19-3-202(1), C.R.S. (2022), which she has invoked. On the other hand, if we adopt her interpretation of the statutes and reinstate the district court's order for directed verdict, there would be no further presentation of evidence or fact-finding procedures at this phase, which could undermine the government's substantial interest in protecting the long-term welfare of L.S. *See A.C.*, ¶ 37, 296 P.3d at 1037. Thus, we perceive no procedural due process violation.

¶32 In light of the uncontested evidence that L.S. had sustained an SBI, we conclude that the district court erred in granting Mother's motion for directed

15

verdict. Still, the court has options on remand. It may conclude, based on the SBI evidence alone, that an appropriate treatment plan can't be devised, or it may hear further argument and accept additional evidence before deciding whether a treatment plan is possible. Nothing in the statute *requires* the court to find that an appropriate treatment plan can't be devised. *See* § 19-3-508(1)(e)(I) (explaining that "the court *may* find that an appropriate treatment plan cannot be devised," but not requiring such a finding (emphasis added)).

¶33 Although the SBI evidence is uncontested here, we nonetheless address the burden of proof required to support a no-treatment-plan finding. The district court, relying on outdated language in *T.W.* that the legislature didn't include in the current Children's Code, concluded that the state's burden is clear and convincing evidence. *See T.W.*, 797 P.2d at 822 ("[C]lear and convincing evidence of irremediable conduct is no less relevant a consideration at a dispositional hearing following a dependency and neglect adjudication than it would be at a termination hearing."). But the requisite burden of proof "turns in large part on both the nature of the threatened private interest and the permanency of the threatened loss," *L.L.*, 10 P.3d at 1276, and neither the statute nor our case law supports such a high burden of proof for any stage of proceedings other than termination.

¶34     The legislature expressly provided a clear and convincing evidence burden only in the termination statutes.     *Compare* § 19-3-604(1) (requiring that a termination order be entered only "upon the finding by clear and convincing evidence" of one of the enumerated criteria), *with* § 19-3-505(1), (6), (7)(a) (requiring that a court's order of adjudication be entered where the allegations in the petition are supported by a preponderance of the evidence ), *and* § 19-3-508(2) (requiring proof by a preponderance of the evidence that removing a child from the legal custody of a parent is in the child's best interests).  And courts in this state have consistently upheld a lesser burden—preponderance of the evidence—in all adjudication and disposition proceedings other than termination.  *See J.G.*, ¶ 30, 370 P.3d at 1160 ("[T]he burden of proof is higher and the State must prove additional criteria when terminating parental rights as opposed to determining whether a child is dependent or neglected."); *L.L.*, 10 P.3d at 1276 ("[W]hile a standard of clear and convincing evidence is constitutionally mandated in a proceeding for terminating the parent-child relationship, a standard of a preponderance of the evidence is sufficient for dependency and neglect proceedings."); *People in Int. of A. M. D.*, 648 P.2d 625, 640 (Colo. 1982) ("[T]he application of the preponderance of the evidence standard for all purposes in the underlying dependency or neglect determination comports with due process of law."); *Z.P.S.*, ¶ 10, 369 P.3d at 816–17 (providing that the "preponderance of the

17

evidence standard applies to both the adjudicatory and dispositional stages of a dependency and neglect proceeding" (quoting *People in Int. of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011))).

¶35 These different burdens exist because termination is the only disposition that permanently deprives parents of their fundamental liberty interests in caring for their children. *See L.L.*, 10 P.3d at 1275–77. All other dispositions and orders — including a no-treatment-plan order — may subsequently be modified if there is a substantial change in circumstances. *Id.* at 1277. And so even where a decision may eventually lead to the termination of parental rights, the initial dispositional hearing decision need be supported only by a preponderance of the evidence. *See A. M. D.*, 648 P.2d at 641 n.14.

¶36 Should the state ultimately seek termination, it must file a motion "alleging the factual grounds for termination," and the court must hold a hearing. § 19-3-602(1). In defending against such a motion, Mother is entitled to cross-examine the state's witnesses and put on witnesses of her own, including an expert, paid for by the state. § 19-3-607(1), C.R.S. (2022). After considering the state's and Mother's evidence, the court *may* terminate parental rights if it finds that all statutory requirements have been established by clear and convincing evidence. *See* § 19-3-604.

¶37 Therefore, we conclude the district court erred by imposing a clear and convincing burden of proof on the state at the dispositional hearing.

## III. Conclusion

¶38 Because there is no dispute that L.S. sustained an SBI, we reverse the district court's order granting Mother's motion for directed verdict, make the rule absolute, and remand the case to the district court for further proceedings.

Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

**2023 CO 33M**

**No. 22SA282, *People in Int. of L.S.* — Statutory Interpretation — Dependency or Neglect — Burden of Proof.**

In this original proceeding, the supreme court considers whether the state satisfies its burden of proving that an appropriate treatment plan can't be devised for a respondent parent in a dependency and neglect case when the state establishes by a preponderance of evidence a single incident resulting in serious bodily injury to the child. The court concludes that it does. The supreme court therefore reverses the district court's order granting Mother's motion for directed verdict and remands the case for further proceedings.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

**2023 CO 33M**

**Supreme Court Case No. 22SA282**
*Original Proceeding Pursuant to C.A.R. 21*
Arapahoe County District Court Case No. 20JV540
Honorable Don Toussaint, Judge

**In Re**
**Petitioner:**

The People of the State of Colorado,

**In the Interest of**

**Child:**

L.S.,

**and Concerning**

**Respondents:**

G.L.A. and D.S.

**Rule Made Absolute**
*en banc*
January 23, 2023

**Modified Opinion. Marked revisions shown.**

**Attorneys for Petitioner:**
Ronald A. Carl, Arapahoe County Attorney
Kristi Erickson, Assistant County Attorney
   *Aurora, Colorado*

Rebecca M. Taylor, Assistant County Attorney
*Littleton, Colorado*

**Attorney for Child:**
Alison Bettenberg, Guardian ad litem
*Centennial, Colorado*

**Attorneys for Respondent G.L.A.:**
Kapoor Law + Policy
Ruchi Kapoor
*Denver, Colorado*

**Attorney for Amicus Curiae Office of Respondent Parents' Counsel:**
Melanie Jordan
*Denver, Colorado*

No appearance on behalf of Respondent D.S.

**JUSTICE HOOD** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ**, **JUSTICE GABRIEL**, **JUSTICE HART**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE HOOD delivered the Opinion of the Court.

¶1    In this original proceeding, we consider whether the state satisfies its burden of proving that an appropriate treatment plan can't be devised for a respondent parent in a dependency and neglect case when the state establishes by a preponderance of evidence a single incident resulting in serious bodily injury to the child.  We conclude that it does.

## I.  Facts and Procedural History

¶2    The following factual background is based on the parties' stipulated motion for relief and the district court's findings of fact following the dispositional hearing on that motion.

¶3    G.L.A. ("Mother") brought L.S., who was one year old at the time, to the hospital for medical treatment.  Hospital staff conducted a skeletal survey, which revealed that L.S. had a broken tibia; two additional fractures that were healing; severe bruising and swelling to his groin; and significant bruising on his back, face, and genitals.  The hospital sent a referral to the Arapahoe County Department of Human Services, and the state filed a petition for dependent or neglected children in district court, alleging that Mother had physically abused L.S.

¶4    The district court adjudicated L.S. dependent or neglected.  About a month later, the court found that an appropriate treatment plan couldn't be devised for Mother based on L.S.'s serious bodily injury ("SBI"), and Mother appealed.

3

¶5 Following the appellate court's dismissal of the case for lack of a final order, *People in Int. of L.R.S.*, No. 21CA432, ¶ 1 (Nov. 18, 2021), the parties filed a stipulated motion for relief. In the motion, Mother admitted that L.S. was dependent or neglected because his environment was injurious to his welfare, and she waived holding an adjudicatory hearing to determine a factual basis for her admission. The parties sought a dispositional hearing to determine whether an appropriate treatment plan could be devised.

¶6 At the end of the state's presentation of evidence, Mother moved for directed verdict, asserting that the state had "failed . . . to prove by clear and convincing evidence the existence of a single incident of SBI. There has been no evidence regarding an appropriate treatment plan whatsoever." The parties debated whether proving an SBI alone could support a finding that no appropriate treatment plan could be devised.

¶7 The district court concluded that although the state had presented evidence that L.S. was adjudicated dependent or neglected and that he had suffered an SBI, the state "did not prove by clear and convincing evidence that an appropriate treatment plan cannot be devised to address the unfitness of Mother . . . [and,] [s]tanding alone, proof of serious bodily injury is not evidence that no treatment plan can be devised." The court then granted Mother's request for directed verdict.

4

¶8    The state petitioned this court for a rule to show cause, which we issued.[1]

## II. Discussion

¶9    We first explain this court's original jurisdiction and our decision to exercise it here. We then briefly discuss the standards that guide our review in this case and the framework for dependency and neglect proceedings. Finally, we interpret the statutory provisions at the heart of this dispute and conclude that the district court misinterpreted the law.

## A. Jurisdiction

¶10    Whether to exercise our original jurisdiction under C.A.R. 21 is a matter wholly within our discretion. C.A.R. 21(a)(1). But C.A.R. 21 provides "an extraordinary remedy that is limited in both purpose and availability." *People v. Lucy*, 2020 CO 68, ¶ 11, 467 P.3d 332, 335 (quoting *People v. Rosas*, 2020 CO 22, ¶ 19, 459 P.3d 540, 545). "Thus, in the past, we have exercised our original jurisdiction

---

[1] The state's petition presented the following issues:

1. Whether the juvenile court erred by requiring additional evidence that no treatment plan can be devised to address a parent's unfitness beyond what is specifically enumerated in sections 19-1-508(1)(e) and 19-3-604(1)(b)(II), C.R.S. (2022).

2. Whether the juvenile court erred in requiring clear and convincing evidence to establish that no treatment plan can be devised at a dispositional proceeding in a dependency and neglect action instead of preponderance of the evidence.

in limited circumstances, such as 'when an appellate remedy would be inadequate, when a party may otherwise suffer irreparable harm, or when a petition raises issues of significant public importance that we have not yet considered.'" *People v. Rainey*, 2021 CO 53, ¶ 9, 488 P.3d 1081, 1084 (quoting *Lucy*, ¶ 11, 467 P.3d at 335).

¶11 This petition presents all three grounds for exercising our jurisdiction. First, there is not a final order that could be appealed. *See People in Int. of E.M., L.M. & E.J.M.*, 2016 COA 38M, ¶¶ 34–35, 417 P.3d 843, 850 (concluding that where the district court found that no appropriate treatment plan could be devised for the parent and didn't otherwise enter a disposition or terminate the parent-child legal relationship, there was no appealable order for the appellate court to review), *aff'd sub nom. People in Int. of L.M.*, 2018 CO 34, 416 P.3d 875. Second, allowing the case to proceed on the district court's order will subject L.S. to an extended period of uncertainty as the court and the parties attempt to devise and implement a treatment plan for Mother. And given the history of abuse presented at the dispositional hearing, as well as the current SBI evidence, L.S. may suffer irreparable harm if we decline to intervene. Finally, this court hasn't previously discussed the evidentiary burden required at a dispositional hearing when the state asserts that an appropriate treatment plan can't be devised for a parent due to the parent's unfitness. *See In re Marriage of Wollert*, 2020 CO 47, ¶ 19, 464 P.3d

703, 709 (explaining that we may exercise original jurisdiction where "we deem this a rare opportunity to construe" a statute).

¶12 Therefore, we exercise our original jurisdiction and proceed to the merits of the petition.

## B. Standard of Review

¶13 We review de novo a district court's ruling on a motion for directed verdict. *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 982 (Colo. App. 2011). Even so, directed verdicts are disfavored; we "must consider all the facts in the light most favorable to the nonmoving party and determine whether a reasonable jury could have found in favor of the nonmoving party." *Scholle v. Ehrichs*, 2022 COA 87M, ¶ 21, 519 P.3d 1093, 1101 (quoting *State Farm Mut. Auto. Ins. Co. v. Goddard*, 2021 COA 15, ¶ 26, 484 P.3d 765, 771).

¶14 Resolution of the motion for directed verdict required the district court to interpret several statutes, a legal question that we also review de novo. *See Reigel*, 292 P.3d at 982 (explaining that because statutory interpretation presents a question of law, "we 'may make an independent determination of [the] legal question'" (alteration in original) (quoting *Omedelena v. Denver Options, Inc.*, 60 P.3d 717, 722 (Colo. App. 2002))).

¶15 Our primary goal in interpreting statutes is to ascertain and give effect to the legislature's intent. *People in Int. of J.G.*, 2016 CO 39, ¶ 13, 370 P.3d 1151, 1157.

To do so, we begin with the language of the statute, reading the words and phrases in context and according to their plain and ordinary meaning. *Bostelman v. People*, 162 P.3d 686, 690 (Colo. 2007). We construe provisions of the Children's Code liberally, favoring interpretations that produce a harmonious and consistent reading of the scheme as a whole and avoiding technical readings that would disregard the child's best interests or the legislative intent. *L.M.*, ¶ 13, 416 P.3d at 879; *Bostelman*, 162 P.3d at 690; *see also* § 19-1-102(2), C.R.S. (2022) ("[T]he provisions of this title shall be liberally construed to serve the welfare of children and the best interests of society.").

### C. Dependency and Neglect Proceedings Overview

¶16 Dependency and neglect proceedings are governed by article three of the Children's Code. §§ 19-3-100.5 to -905, C.R.S. (2022). These proceedings are "aimed at protecting children from emotional and physical harm while at the same time seeking to repair and maintain family ties." *L.L. v. People*, 10 P.3d 1271, 1275 (Colo. 2000). In striving to balance these objectives, the legislature separated the proceedings into phases. *People in Int. of D.R.W.*, 91 P.3d 453, 456 (Colo. App. 2004).

¶17 The first phase is adjudication. § 19-3-505(7)(a), C.R.S. (2022). "The purpose of adjudication is to determine whether State intervention is necessary to serve the best interests of the children, but to do so in a manner that protects parental

8

rights." *J.G.*, ¶ 24, 370 P.3d at 1159. Until the court has entered an adjudication order, "the state has limited authority to take action to protect a child." *L.L.*, 10 P.3d at 1276. If the state proves the allegations in the petition by a preponderance of the evidence, the court "shall make an order of adjudication setting forth whether the child is neglected or dependent." § 19-3-505(7)(a).

¶18 Once the court enters an adjudication order, it must hold a dispositional hearing to determine "the proper disposition [to] best serv[e] the interests of the child and the public." § 19-3-507(1)(a), C.R.S. (2022); *see also* § 19-1-103(58), C.R.S. (2022); § 19-3-505(7). The dispositional hearing should be held the same day as the adjudicatory hearing whenever possible. § 19-3-508(1), C.R.S. (2022).

¶19 During this dispositional phase, the court determines where to place the child and whether a treatment plan can be devised for the parents. *Id.* The goal is to protect the child while striving to reunify the family. *See generally* § 19-3-508; *L.M.*, ¶ 24, 416 P.3d at 880–81; *K.D. v. People*, 139 P.3d 695, 699 (Colo. 2006). At the conclusion of this initial dispositional hearing, the court will enter a "dispositional decree" that includes both child-placement and parental-treatment-plan orders; however, that decree may be reviewed and modified at any point while the case remains open. § 19-3-508(7); § 19-3-702, C.R.S. (2022); *L.L.*, 10 P.3d at 1277.

¶20 The legislature has also recognized that sometimes an appropriate treatment plan can't be devised. § 19-3-508(1)(e)(I); *K.D.*, 139 P.3d at 700; *People in Int. of*

9

*Z.P.S.*, 2016 COA 20, ¶ 16, 369 P.3d 814, 817. For example, and as relevant here, section 19-3-508(1)(e)(I) permits a court to find that an appropriate treatment plan can't be devised "due to the unfitness of the parents as set forth in section 19-3-604(1)(b)[, C.R.S. (2022)]." Section 19-3-604(1)(b) lists "[a] single incident resulting in serious bodily injury or disfigurement of the child" as one of the bases for parental unfitness. § 19-3-604(1)(b)(II). Under such circumstances, a court's dispositional decree may include a finding that an appropriate treatment plan can't be devised, thereby "avoiding the futility of proceeding with a treatment plan doomed to failure." *D.R.W.*, 91 P.3d at 457.

¶21 After this initial dispositional hearing, and regardless of whether parents are proceeding under a treatment plan or not, the court "shall conduct a permanency planning hearing," in order "to provide stable, permanent homes for every child or youth placed out of the home, in as short a time as possible." § 19-3-702(1)(a); *see also* § 19-3-508(1)(e)(I).

¶22 Although not immediately at issue here, it is helpful to understand that dependency and neglect proceedings can culminate in termination. If it becomes apparent that "maintaining the family unit is not feasible, . . . the court may order termination of the parent-child relationship." *L.L.*, 10 P.3d at 1275; *see* § 19-3-602(1), C.R.S. (2022); § 19-3-604. Termination proceedings are governed by separate rules with heightened burdens. *See* §§ 19-3-601 to -612, C.R.S. (2022)

("termination statutes"); *see also* § 19-3-508(1), (3) (excluding termination from those provisions).

¶23　With this framework in mind, we turn to the issues presented here.

## D. Application

¶24　At the dispositional hearing following the court's adjudication order, the state introduced undisputed evidence that L.S. had suffered an SBI. The state argued that, based on sections 19-3-508 and 19-3-604, the incident of SBI rendered Mother unfit and an appropriate treatment plan couldn't be devised. Mother moved for directed verdict, asserting that the state had failed to show by clear and convincing evidence that a treatment plan couldn't be devised *to address her unfitness*, as required under section 19-3-604.

¶25　The district court agreed with Mother. It found that an SBI alone is insufficient to forgo devising a treatment plan and that the state must show by clear and convincing evidence that no treatment plan could address Mother's unfitness. In doing so, the district court raised the burden of proof and added an element not required by the statutes' plain language.

¶26　The district court relied primarily on *People in Interest of T.W.*, 797 P.2d 821 (Colo. App. 1990). Although that decision preceded the current Children's Code and includes some language that the statutes no longer contain, it also recognized that a treatment plan is not required in every case. *Id.* at 822 ("*If* a treatment plan

11

is to be part of this disposition, it must be one 'reasonably calculated to render the particular respondent fit to provide adequate parenting to the child within a reasonable time and which is relative to the child's needs.'" (emphasis added) (quoting § 19-3-111(1)(e)(II), 8B C.R.S. (1986))). The *T.W.* court concluded that, "[t]o require a trial court to ignore [the state's evidence of] a parent's irremediable conduct at a dispositional hearing and devise a treatment plan that is doomed to failure would both contravene the purposes of the Children's Code and elevate form over substance." *Id.* Thus, a trial court could conclude that an appropriate treatment plan can't be devised according to the bases in subsection 604(1)(b). *Id.* The same rule applies today.

¶27 Because a decision regarding a parent's treatment plan occurs as part of the dispositional proceedings, the governing statute is section 19-3-508. The relevant provision provides that "the court may find that an appropriate treatment plan cannot be devised . . . due to the unfitness of the parents as *set forth in* section 19-3-604(1)(b)." § 19-3-508(1)(e)(I) (emphasis added).

¶28 By its own terms, section 19-3-604 applies only to termination proceedings: "The court may order a termination of the parent-child legal relationship upon the finding by clear and convincing evidence . . . [t]hat the child is adjudicated dependent or neglected and the court finds that an appropriate treatment plan cannot be devised to address the unfitness of the parent or parents."

12

§ 19-3-604(1)(b).  The next sentence of that provision, however, provides the bases necessary to support a finding of unfitness: "In making such a determination, the court shall find one of the following [seven bases] as the basis for unfitness."  *Id.* This is the portion referenced in subsection 508 that "set[s] forth" the bases for unfitness and includes as one of those bases "[a] single incident resulting in serious bodily injury or disfigurement of the child."  § 19-3-604(1)(b)(II).

¶29     Reading the plain language of subsections 508(1)(e)(I) and 604(1)(b)(II) together, we conclude that the legislature intended to allow trial courts to find that a parent is unfit and no appropriate treatment plan can be devised if the state shows that the child has suffered a "single incident resulting in [SBI]."[2]

---

[2] We are not persuaded by Mother's argument that this interpretation of state statutes runs afoul of the Adoption and Safe Families Act ("ASFA"), 42 U.S.C. §§ 670–679c.  First, ASFA is a funding bill that provides criteria by which a state must comply to receive federal funding; it does not create a private, enforceable right for parents or children.  *Suter v. Artist M.*, 503 U.S. 347, 358–64 (1992); *see* 42 U.S.C. § 1320a-2 ("[T]his section is not intended to alter the holding in *Suter v. Artist M.* that section 671(a)(15) of this title is not enforceable in a private right of action.").  Second, states are given broad discretion to determine how best to comply with the Act's provisions.  *Suter*, 503 U.S. at 360–63.  ASFA requires state plans to make reasonable efforts to preserve and reunify the family before removing the child from the home, if possible, and to make it possible for the child to safely return, but all reasonable efforts shall place the child's health and safety as the paramount concern.  42 U.S.C. § 671(a)(15)(A)–(B).  Such reasonable efforts aren't required if the parent has subjected the child to aggravated circumstances, as defined by state law.  42 U.S.C. § 671(a)(15)(D)(i).  Although our legislature didn't use the same language as ASFA—"aggravated circumstances"—it defined

§ 19-3-604(1)(b)(II). The state need not *also* show that the parent caused the SBI or that no treatment plan can be devised *to address the parent's conduct that caused the SBI. See J.G.*, ¶¶ 23–31, 370 P.3d at 1159–61 (concluding that the court of appeals' statutory interpretation erroneously added an element that the statute didn't require and thereby ignored the plain language of the statue). SBI alone suffices.[3]

¶30    Furthermore, contrary to Mother's assertions, our interpretation does not violate her right to procedural due process. This court has repeatedly held that procedural due process is satisfied if a parent is provided with "notice of the

specific, limited situations where a court may determine that reasonable efforts to preserve the family would be futile. *See* § 19-3-604(1)(b). This provision complies with ASFA's requirements. *See* § 19-3-100.5, C.R.S. (2022); § 19-1-103(114), C.R.S. (2022) (defining "reasonable efforts" by explaining that the child's "health and safety are the paramount concern" and should not be "construed to conflict with federal law"); *see also Suter*, 503 U.S. at 361–63 ("[Federal] regulations provide that to meet the requirements of § 671(a)(15) the case plan for each child must 'include a description of the services offered and the services provided to prevent removal of the child from the home and to reunify the family.' 45 CFR § 1356.21(d)(4) (1991). . . . [And] [t]he term 'reasonable efforts' in this context is at least as plausibly read to impose only a rather generalized duty on the State . . . .").

[3] The statute contains no language regarding causation, and we cannot add words to the statute that aren't there. *Montez v. People*, 2012 CO 6, ¶ 19, 269 P.3d 1228, 1232. To the extent that Mother's argument "may highlight shortcomings in the statute," it is for the legislature, not the courts, to rewrite it. *People v. Butler*, 2017 COA 117, ¶ 35, 431 P.3d 643, 650; *see Owens v. Carlson*, 2022 CO 33, ¶ 30, 511 P.3d 637, 643 ("That we may rue inartful legislative drafting, however, does not excuse us from the responsibility of construing a statute as faithfully as possible to its actual text." (quoting *DePierre v. United States*, 564 U.S. 70, 82 (2011))).

allegations in the termination motion, the opportunity to be heard, the opportunity to have counsel if indigent, and the opportunity to call witnesses and engage in cross examination." *People in Int. of E.B.*, 2022 CO 55, ¶ 16, 521 P.3d 637, 640 (quoting *People in Int. of A.M. v. T.M.*, 2021 CO 14, ¶ 18, 480 P.3d 682, 687). And in assessing fairness, "the trial court [must] give primary consideration to the child's physical, mental, and emotional needs." *A.M.*, ¶ 20, 480 P.3d at 687.

¶31 Here, although Mother's "private interest in the continuation of the parent-child relationship is commanding," *see A.M. v. A.C.*, 2013 CO 16, ¶ 34, 296 P.3d 1026, 1036, she has been provided, and will continue to receive, notice and an opportunity to be heard. And while there is not a constitutional right to counsel for respondent parents in all cases, *see Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25–32 (1981), Mother has a statutory right to counsel "at every stage of the proceedings," § 19-3-202(1), C.R.S. (2022), which she has invoked. On the other hand, if we adopt her interpretation of the statutes and reinstate the district court's order for directed verdict, there would be no further presentation of evidence or fact-finding procedures at this phase, which could undermine the government's substantial interest in protecting the long-term welfare of L.S. *See A.C.*, ¶ 37, 296 P.3d at 1037. Thus, ~~in~~we perceive no procedural due process violation.

~~¶30~~¶32 In light of the uncontested evidence that L.S. had sustained an SBI, we conclude that the district court erred in granting Mother's motion for directed

15

verdict. ~~On~~ Still, the court has options on remand~~, the district court~~. It may conclude, based on the SBI evidence alone, that an appropriate treatment plan can't be devised, or it may hear further argument and accept additional evidence before deciding whether a treatment plan is possible. *Nothing in the statute requires the court to find that an appropriate treatment plan can't be devised.* *See* § 19-3-508(1)(e)(I) (explaining that "the court *may* find that an appropriate treatment plan cannot be devised," but not requiring such a finding (emphasis added)).

¶~~31~~33 Although the SBI evidence is uncontested here, we nonetheless address the burden of proof required to support a no-treatment-plan finding. The district court, relying on outdated language in *T.W.* that the legislature didn't include in the current Children's Code, concluded that the state's burden is clear and convincing evidence. *See T.W.*, 797 P.2d at 822 ("[C]lear and convincing evidence of irremediable conduct is no less relevant a consideration at a dispositional hearing following a dependency and neglect adjudication than it would be at a termination hearing."). But the requisite burden of proof "turns in large part on both the nature of the threatened private interest and the permanency of the threatened loss," *L.L.*, 10 P.3d at 1276, and neither the statute nor our case law supports such a high burden of proof for any stage of proceedings other than termination.

¶32¶34 The legislature expressly provided a clear and convincing evidence burden only in the termination statutes. *Compare* § 19-3-604(1) (requiring that a termination order be entered only "upon the finding by clear and convincing evidence" of one of the enumerated criteria), *with* § 19-3-505(1), (6), (7)(a) (requiring that a court's order of adjudication be entered where the allegations in the petition are supported by a preponderance of the evidence ), *and* § 19-3-508(2) (requiring proof by a preponderance of the evidence that removing a child from the legal custody of a parent is in the child's best interests). And courts in this state have consistently upheld a lesser burden—preponderance of the evidence—in all adjudication and disposition proceedings other than termination. *See J.G.*, ¶ 30, 370 P.3d at 1160 ("[T]he burden of proof is higher and the State must prove additional criteria when terminating parental rights as opposed to determining whether a child is dependent or neglected."); *L.L.*, 10 P.3d at 1276 ("[W]hile a standard of clear and convincing evidence is constitutionally mandated in a proceeding for terminating the parent-child relationship, a standard of a preponderance of the evidence is sufficient for dependency and neglect proceedings."); *People in Int. of A. M. D.*, 648 P.2d 625, 640 (Colo. 1982) ("[T]he application of the preponderance of the evidence standard for all purposes in the underlying dependency or neglect determination comports with due process of law."); *Z.P.S.*, ¶ 10, 369 P.3d at 816–17 (providing that the "preponderance of the

17

evidence standard applies to both the adjudicatory and dispositional stages of a dependency and neglect proceeding" (quoting *People in Int. of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011))).

¶33¶35 These different burdens exist because termination is the only disposition that permanently deprives parents of their fundamental liberty interests in caring for their children. *See L.L.*, 10 P.3d at 1275–77. All other dispositions and orders — including a no-treatment-plan order — may be subsequently be modified if there is a substantial change in circumstances. *Id.* at 1277. And so even where a decision may eventually lead to the termination of parental rights, the initial dispositional hearing decision need be supported only by a preponderance of the evidence. *See A. M. D.*, 648 P.2d at 641 n.14. Should the case proceed to termination, the state will be required to prove by clear and convincing evidence that termination is in the child's best interests, including the existence of any relevant orders entered or evidence presented during prior proceedings under the preponderance of the evidence standard. *See id.*

¶36 Should the state ultimately seek termination, it must file a motion "alleging the factual grounds for termination," and the court must hold a hearing. § 19-3-602(1). In defending against such a motion, Mother is entitled to cross-examine the state's witnesses and put on witnesses of her own, including an expert, paid for by the state. § 19-3-607(1), C.R.S. (2022). After considering the

state's and Mother's evidence, the court *may* terminate parental rights if it finds that all statutory requirements have been established by clear and convincing evidence. *See* § 19-3-604.

¶34¶37 Therefore, we conclude the district court erred by imposing a clear and convincing burden of proof on the state at the dispositional hearing.

### III. Conclusion

¶35¶38 Because there is no dispute that L.S. sustained an SBI, we reverse the district court's order granting Mother's motion for directed verdict, make the rule absolute, and remand the case to the district court for further proceedings.